THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANONYMOUS et al., Respondents, v ANONYMOUS et al., Appellants.

Third Department, July 14, 1988

APPEARANCES OF COUNSEL

*DeGraff, Foy, Conway, Holt-Harris & Mealey (Kirk M. Lewis* and *John T. DeGraff, Jr.,* of counsel), for appellants.

*Thomas J. Donohue* for respondents.

### OPINION OF THE COURT

LEVINE, J.

Petitioners are the biological parents of the infant whose custody is at issue in this habeas corpus proceeding. The mother gave birth to the child on March 1, 1987. She and the father were not married. In January 1987, she had numerous discussions with respondents leading to an understanding between them that she would give the child to them for adoption. Ultimately, still before delivery of the child, she was contacted by respondents' attorney and directed to appear on February 23, 1987 at the chambers of the County Judge of Greene County, who also served as Family Court Judge, to sign the necessary papers. On that date petitioners executed and acknowledged a consent to adoption in the presence of the Judge in his chambers. Two days after giving birth, the mother also executed and acknowledged two instruments evidencing her authorization for the hospital to release the child to respondents' agent for purposes of adoption.

Some 18 days after giving up custody, petitioners filed a notice of revocation of consent in Greene County Family Court. Family Court, after declining to consider petitioners' objections regarding the validity of the consent, set the matter down for a hearing to determine whether the best interest of the child would be served by either returning him to petitioners' custody or completing his adoption by respondents *(see,* Domestic Relations Law § 115-b [6] [d] [ii]). Thereafter, petitioners initiated the instant proceeding in Supreme Court, in which they challenge the validity of the consent. Family Court postponed the "best interest" hearing pending Supreme Court's determination of petitioners' application.

Following a trial, Supreme Court rendered a decision sustaining the writ of habeas corpus. It ruled that the consent was void *ab initio* on two grounds: (1) that the pertinent provisions of Domestic Relations Law article VII dealing with

consents to adoption (Domestic Relations Law §§ 111, 115-b) do not authorize the execution of a valid adoption consent prior to the birth of the child to be adopted, and (2) that the statutory requirements were not met to qualify the consent given by petitioners here as either a valid judicial consent (Domestic Relations Law § 115-b [2]) or extrajudicial consent (Domestic Relations Law § 115-b [3], [4] [a]). Having held that petitioners' consent was invalid and finding no proof of petitioners' unfitness, Supreme Court applied the common-law presumption favoring the biological parents' right to custody and directed that the child be restored to petitioners (see, *People ex rel. Scarpetta v Spence-Chapin Adoption Serv.,* 28 NY2d 185, *cert denied sub nom. DeMartino v Scarpetta,* 404 US 805). This appeal followed.

■ There should be an affirmance. In only one instance do the adoption laws expressly authorize a voluntary relinquishment of parental rights before the birth of the child, namely, the consent of a putative father is not required if he has "executed an instrument, which shall be irrevocable, denying the paternity of the child or consenting to the other parent's surrender of the child or consent to the child's adoption, such instrument having been executed *after conception"* (Domestic Relations Law § 111 [2] [e] [emphasis supplied]).* Aside from this one exception, Domestic Relations Law §§ 111 and 115-b neither expressly prohibit nor approve execution of a prebirth consent to adoption and, in our view, the inclusion of this single, narrow circumstance where a person is permitted to irrevocably sign away parental rights before the birth of the child is persuasive evidence that no general authority to do so in all cases was intended (see, McKinney's Cons Laws of NY, Book 1, Statutes § 240).

Domestic Relations Law § 115-b, as originally enacted (L 1972, ch 639, § 3) and as most recently amended (L 1986, ch 817, § 1), was designed "to introduce certainty and finality by limiting a parent's right to revoke consent, with the stated intention of *balancing the rights of surrendering parents, adoptive parents and children" (Matter of Sarah K.,* 66 NY2d 223, 234, *cert denied sub nom. Kosher v Stamatis,* 475 US 1108 [emphasis supplied]). In its initial version, the rights of the biological parent were protected by requiring that the consent

---

* We need not consider the application of this provision as to the biological father's parental rights in the instant case, in view of our alternative ground for invalidating petitioners' consent *(infra).*

instrument itself explicitly advise of its irrevocability, immediately in the case of a judicial consent and 30 days after the commencement of the adoption proceeding in the case of a nonjudicial consent (Domestic Relations Law former § 115-b, as enacted by L 1972, ch 639, § 3). Thus, the original section 115-b represented an effort to achieve early finality in adoptions, but only after assuring that the biological parent had made an informed, well-considered decision to relinquish parental rights. As stated by the sponsoring legislator, "[t]his bill * * * provides adequate safeguards to the natural mother against an improvident decision by her to give up the child for adoption" (mem of Assemblyman Joseph R. Pisani, 1972 NY Legis Ann, at 203). The 1986 amendments to section 115-b were specifically added to further strengthen those safeguards, "to insure voluntariness and knowing consent" (mem of Off of Ct Admin [recommending approval of L 1986, ch 817], 1986 McKinney's Session Laws of NY, at 3394). Notably, before signing either a judicial or nonjudicial consent, a biological parent must be advised of the right to consult an attorney and "to obtain supportive counseling" (Domestic Relations Law § 115-b [2] [b]; [4] [a] [v]).

In our view, a construction of the statute permitting a valid prebirth consent is inconsistent with the statutory objective of insuring that a consent to adoption is a fully deliberative act on the part of the biological parent. Indeed, under the present statute, which measures the time to revoke an extrajudicial consent from the date of its execution (Domestic Relations Law § 115-b [6] [b]), acceptance of respondents' construction could readily result in a consent becoming final and totally irrevocable even before the birth of the child. Not only would such an outcome conflict with the humane objective of the Legislature to protect the consenting biological parent against improvidence or overreaching, it would also unduly enhance the rights of adoptive parents beyond their legitimate interest to be enabled to form secure emotional attachments to the child within a relatively short period of time following placement (see, Matter of Sarah K., supra, at 234-235).

Other adoption provisions are supportive of our conclusion that a prebirth consent was not contemplated. Domestic Relations Law § 115-b was initially enacted as part of the legislative package which also introduced parallel reforms with respect to the procedures for surrenders for adoption from authorized agencies (Social Services Law § 384 [5], as added by L 1972, ch 639, § 2). The statutory written surrender not only

grants the recipient agency the authority to consent to adoption of the surrendered child (Social Services Law § 384 [2]), it is also the instrument by which "[t]he guardianship of the person and the custody of a destitute or dependent child * * * may be committed to [the] * * * agency" (Social Services Law § 384 [1]). Thus, the parallel surrender provisions leading to agency adoptions unmistakably contemplate that the child is in being when the surrender is executed. Domestic Relations Law § 115-b is clearly in *pari materia* with the foregoing statutory provisions regarding surrenders for adoption from authorized agencies and, therefore, should be given a like construction *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 221).

■ Supreme Court's alternative ground for invalidating petitioners' consent was equally sound. The uncontradicted evidence was that the consent instrument contained no statement advising petitioners that it became irrevocable on execution and that the Judge before whom it was executed did not so advise them, nor did he inform them of their rights to be represented by counsel or to obtain supportive counseling. Thus, the consent did not conform to the statutory requirements for a binding judicial consent *(see,* Domestic Relations Law § 115-b [2] [a], [b]). Similarly, the consent did not qualify as an extrajudicial consent, since it did not contain express notice (1) of its irrevocability within 45 days of execution, (2) that if timely revocation is contested by the adoptive parents, the biological parent would only be entitled to a best-interest hearing, and (3) that the biological parent had the right to legal representation and supportive counseling *(see,* Domestic Relations Law § 115-b [4] [a]).

■ Since the record is entirely devoid of any proof that petitioners were otherwise made aware of either the foregoing legal consequences of the consent they signed or of their statutory rights in connection therewith, petitioners have full standing to challenge these infirmities in the consent procedures *(cf., Matter of Sarah K., supra,* at 240-241; *Matter of Daniel C.,* 99 AD2d 35, 38-42, *affd* 63 NY2d 927). As previously discussed, the notifications to the biological parent required under Domestic Relations Law § 115-b are key elements of the sensitive statutory balance of the competing interests of biological and adoptive parents. Therefore, contrary to respondents' contention on appeal, the defects in the procedures used in obtaining petitioners' consent may not be overlooked as mere technical irregularities.

■ We disagree, however, with Supreme Court's conclusion that the failures to conform to the statutory procedures rendered the consent herein void *ab initio*. The adoption laws provide generally for the giving of a consent to adoption by biological parents and the obtaining of such a consent by adoptive parents. Public policy supports the validity of an adoption consent when the statutory requirements are fulfilled. Plainly, both the statutory notice prerequisites and the mandate that a consent must be executed after the birth of the child are aimed at safeguarding the rights and interests of the biological parents in adoption proceedings, rather than affording some kind of protection for the public-at-large. Therefore, and particularly in view of the potential consequences of Supreme Court's holding of voidness *ab initio* on long-standing, fully consummated adoptions, the consent herein was voidable at the instance of petitioners, and not void *ab initio* (see, *Blinn v Schwarz,* 177 NY 252, 259; *O'Mara v Dentinger,* 271 App Div 22, 30; see also, *Union Guardian Trust Co. v Schram,* 123 F2d 579, 581; *Unkle v Wills,* 281 F 29, 41). This means that the consent herein was subject to being validated by the biological parents' subsequent reaffirmation (see, *Matter of Infant S. [Tretin],* 48 AD2d 425, 426) or ratification (see, *Matter of Adoption of Krueger,* 104 Ariz 26, 448 P2d 82). In this regard, the mother's postbirth execution of instruments authorizing the hospital to release the child to respondents for purposes of adoption may have been considered evidence of a ratification of the prebirth consent (see, supra). However, there is no evidence that when she signed the latter instruments she had been made aware of her rights and the legal consequences of the prior consent. Therefore, the execution of the release instruments after the child was born did not serve to cure the noncompliance with the statutory notification requirements when the consent was obtained.

■ Since the consent to adoption was invalid and of no legal effect, Supreme Court correctly applied the common-law presumption favoring the biological parents in custody contests with nonparents and its award of custody to petitioners must be upheld (see, *People ex rel. Scarpetta v Spence-Chapin Adoption Serv.,* 28 NY2d 185, *supra;* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C115-b:3, at 507).

MAHONEY, P. J., CASEY, WEISS and MERCURE, JJ., concur.

Judgment affirmed, with costs.