806 P.2d 892

**In the Matter of the Appeal in PIMA COUNTY JUVENILE SEVERANCE ACTION NO. S–2698.**

**No. 2 CA–JV 89–0050.**

Court of Appeals of Arizona, Division 2, Department A.

July 17, 1990.

Review Denied March 19, 1991.*

---

* Cameron, J., of the Supreme Court, voted to grant review.

Ann M. Haralambie, P.C. by Ann M. Haralambie, Tucson, for LDS Social Services.

Bernadette A. Ruiz, Tucson, for minor.

Curtis & Cunningham by George Haskel Curtis, Tucson, for mother.

Rick Rikkers, Executive Director for Arizona Children's Home, amicus curiae, Tucson.

Thomas Murphy, Tucson, for amicus curiae Catholic Community Services of Southern Arizona.

William A. Harrell, Phoenix, for Christian Family Care Agency.

Rita Meiser, Phoenix, for amicus curiae Catholic Family and Community Services and Family Services Agency.

Jennie Woods, Program Director of House of Samuel Children's Services, Inc., amicus curiae Tucson.

Terry Williams, Phoenix, for amicus curiae Southwest Adoption Center.

## OPINION

LIVERMORE, Presiding Judge.

The minor, a male child born February 4, 1989, and LDS Social Services appeal from the juvenile court's order vacating the consent to place the child for adoption executed by the natural mother on the

grounds that it was void *ab initio* and that it was not subsequently reaffirmed by the mother. Various state adoption agencies have filed an *amici curiae* brief in support of appellants' position that the consent was not void *ab initio*. For the reasons stated below, we modify that portion of the juvenile court's order finding the consent void *ab initio* and affirm.

## FACTS AND PROCEDURAL HISTORY

The mother became pregnant by an escaped convict while she was separated from her husband, although she reconciled with her husband before the child's birth. The husband made it clear, however, that he did not want the child and the mother contacted LDS Social Services (the agency) in October 1988, seeking information regarding adoptive services. After the child's birth, he was immediately placed in temporary foster care through the agency. On February 9, 1989, the mother and her husband went to the agency to sign consents to place the child for adoption. The mother met with the caseworker alone and expressed some ambivalence regarding the adoption. However, both she and her husband signed the consents. Although the consents provided that they were irrevocable as required by A.R.S. §§ 8–106 and 107, the caseworker and the mother agreed that the child would be returned to her if she changed her mind. According to the caseworker, he placed a time limit of a couple of days to a few weeks on her decision while the mother claimed he placed no time limit on it. The following day the mother asked that the child be returned to her, which he was.

On February 17, the mother telephoned the caseworker. According to the caseworker the mother stated unequivocally that she wanted the child placed for adoption, quoting her in the notes he took of the conversation. According to the mother, however, she merely told the agent that she was leaving her husband and was trying to make arrangements to move to Utah to live with her mother and, until she could get things arranged, she wanted to place the child in foster care. Also according to the mother, one week to 10 days later she began telephoning the agency so that she could get her child. The agency contends that the mother did not call until April when she reached the caseworker at home and stated she wanted her baby back. The agency had already placed the child with an adoptive family and refused. A severance proceeding had been commenced as to the natural father and adoption proceedings were underway. The mother filed a motion in the severance proceeding to set aside the consent.

Following an evidentiary hearing, the juvenile court found that the consent was void *ab initio* because of the side agreement between the mother and the caseworker that the agreement would not be irrevocable, as the statute requires that irrevocability actually be intended by the parties. Additionally, the court concluded that the evidence was insufficient to support a ratification of the consent.

## ISSUES

On appeal the agency raises the following issues: (1) the juvenile court erred in concluding that A.R.S. § 8–107 requires that the parties must intend a consent to adoption be irrevocable; (2) the juvenile court erroneously concluded that the consent was void *ab initio*; (3) the juvenile court's resolution of certain factual issues and its findings were erroneous in light of the evidence presented; and (4) the court erred in disallowing the admission of certain evidence. The child raises similar issues and, in addition, claims that the court abused its discretion by refusing to allow him to examine a counselor regarding the extent and quality of the child's bonding with the adoptive parents and the impact of a separation.

## THE CONSENT

■ Appellants raise numerous issues related to the court's findings that the consent was void *ab initio* and that the evidence did not sufficiently establish that it was subsequently ratified. First, appellants contend that neither A.R.S. § 8–107 nor § 8–106 require that the parties intend

a consent to be irrevocable. Section 8–106(E) provides that consents for adoption are "irrevocable unless obtained by fraud, duress or undue influence." A.R.S. § 8–107, which sets forth the required content of a consent, provides that it shall specify that it is irrevocable pursuant to A.R.S. § 8–106.

Taken to its logical conclusion, appellants' argument means that parties may have side agreements and still be in compliance with the statute as long as the consent pays lip service to the language required by statute by including it. Thus, the agency, the child and the *amici curiae* would have courts accept such consents notwithstanding the fact that they are contracts that do not accurately reflect the true intentions of the parties. We disapprove of any secret, side agreements such as the one here. *See In Re Adoption of Hammer*, 15 Ariz.App. 196, 487 P.2d 417 (1971). Indeed, we are compelled to point out to the agency and the *amici curiae* that if it had not been for the side agreement or if a new consent was prepared when the mother delivered the child to the agency for the second time, this problem would not have arisen. We believe that it goes without saying that such consents must be irrevocable in the true sense. However, we disagree with the juvenile court that because of the side agreement between the caseworker and the mother, the consent was void *ab initio*. We believe that under the circumstances of this case, where it is undisputed that the consent was revocable, the consent was voidable.[1] If, for example, the first time the mother asked that her baby be returned to her and the agency refused, taking the position that on its face the consent provided that it was irrevocable, under A.R.S. § 8–106(E), the mother could claim that the consent was fraudulently induced (the agency had agreed it would be revocable); it would then be void. That did not happen here, as the agency abided by the caseworker's side agreement and returned the child to her.

Unlike the juvenile court, we find the case of *In Re Adoption of Krueger*, 104 Ariz. 26, 448 P.2d 82 (1968), to be analogous. There, the court held that the mother's execution of a consent to adoption before the child's birth was voidable as opposed to void. The case was decided before the present statute was enacted which renders invalid any consent executed before 72 hours after the birth of the child, A.R.S. § 8–107(B), although, based upon the statute in effect at the time *Krueger* was decided, the court concluded that the provisions clearly contemplated the adoption of a child in being and separate from its mother. *See also* A.R.S. § 8–107(F) (consent invalid if given to other than an agency or the division when it does not designate a particular person or permits a third person to locate or nominate adoptive parent). There is no provision rendering invalid at its inception a consent that is not irrevocable because of an oral agreement. *See People ex rel. Anonymous v. Anonymous*, 139 A.D.2d 189, 530 N.Y.S.2d 613 (1988).

As in *Krueger*, however, a voidable consent must be ratified to be effective. This is particularly true here not only because the consent was voidable but because it was used after the child was returned to the mother and under these circumstances, there must be evidence of the mother's reaffirmation of the previously executed consent. "A voidable consent may be ratified by a subsequent act which sufficiently manifests a present intention to the adoption of the child." *Krueger*, 104 Ariz. at 30, 448 P.2d at 86. Because of its resolution of the conflicting facts, the juvenile court concluded that there was insufficient evidence to establish such a ratification. Specifically, the court concluded that the agency had simply inferred the mother's intention to give the child up for adoption on February 17 by the mere act of returning the child, rejecting the caseworker's testimony that the mother expressly stated she was doing so for adoption place-

---

1. This case is distinguishable from *Anonymous v. Anonymous*, 23 Ariz.App. 50, 530 P.2d 896 (1975), where the court found the consent irrevocable notwithstanding the mother's claim that she was under the mistaken impression that the consent was revocable. That the consent was truly revocable here, at least initially, is undisputed.

ment. Apparently the court believed the mother's testimony that she advised the caseworker that "she feared for her safety and that of her children, that she wanted the child with her but if she couldn't, she wanted the child in a safe place." The court concluded that the mother believed that it was implied that she would pick up her son when she was ready to do so. The court also believed that the mother began calling the agency one week to 10 days after she returned the child to arrange to pick up her child, not two and one-half months later as contended by the agency.

■ We will not substitute our own opinion for that of the juvenile court and we will not interfere with the court's factual findings unless they are clearly erroneous and there is no reasonable evidence to support them. *Pima County, Adoption B–6355 and H–533,* 118 Ariz. 111, 115, 575 P.2d 310, 314, *cert. denied, Clark v. Curran,* 439 U.S. 848, 99 S.Ct. 149, 58 L.Ed.2d 150 (1978); *Anonymous v. Anonymous,* 25 Ariz.App. 10, 540 P.2d 741 (1975). In light of the mother's testimony, notwithstanding significant evidence to the contrary, we cannot say that clear error was committed here. Additionally, given the juvenile court's factual findings, we cannot say the court's conclusion that the evidence was insufficient to establish a ratification and reaffirmation of the consent was erroneous.

### EXCLUDED EVIDENCE

■ Trial courts are granted broad discretion in determining the admissibility of evidence. Absent an abuse of discretion, we will not disturb such decisions on appeal. *State v. Fisher,* 141 Ariz. 227, 686 P.2d 750, *cert. denied, Fisher v. Arizona,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984); *State v. Macumber,* 119 Ariz. 516, 582 P.2d 162, *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978).

■ A counselor at the agency who met with the mother testified at the hearing on the motion to vacate the consent. He was questioned by the appellants' attorneys regarding the theory of "cognitive dissonance" which the appellants contend would explain the mother's testimony and render her credibility highly questionable. The court did not allow the expert to express an opinion on the mother's credibility. We find no error.

In *State v. Moran,* 151 Ariz. 378, 382, 728 P.2d 248, 252 (1986), the court stated:

> We do not consider admission of particularized testimony about credibility a Rule 403 balancing situation. We see no reason to risk influencing the jury's credibility determination by allowing expert opinion testimony on a witness's believability.... 'An expert's belief in a witness's credibility has never been a permissible subject of expert opinion less the trial process return to the discredited notion of marshalling adherents of either side as oathtakers.' M. Udall & J. Livermore, *Law of Evidence* § 22, at 30–31 (2d ed. 1982).

We do not believe an opinion by this witness as to the mother's credibility would have been proper under the circumstances. We agree with the mother that insufficient foundation was established under Ariz.R. Evid. 702, 17A A.R.S., to show that the witness was an expert qualified to give an opinion on the mother's credibility. We find no abuse of the court's discretion in restricting the witness's testimony.

■ The agency further contends that the court erred in precluding portions of certain notes taken by the caseworker under Ariz.R.Evid. 803(6), 17A A.R.S., the business records exception to the hearsay rule. The notes were dictated by the caseworker the day the mother returned for the child the first time and are as follows:

> This counselor has a gut feeling that we have not heard the last of [the mother]. Her obvious lack of emotion upon seeing her child (after 5 days) may have something to do with this feeling. Her file will not be closed at this time.

It does not appear that the notes were actually stricken from the record, although a discussion did take place during which the juvenile court stated that the statements were inadmissible on the ground that they were analogous to a police officer's opinions in his report; such opinions are the speculations and thought processes of the author of the report and are not normally admissible. *See* Ariz.R.Evid. 701,

**308**

17A A.R.S.; *see also State v. Hardy*, 112 Ariz. 205, 540 P.2d 677 (1975). Even if the opinion evidence may have been admissible under this court's recent decision in *State ex rel. Miller v. Tucson Associates Limited Partnership*, 165 Ariz. 519, 799 P.2d 860 (1990), any error was harmless because although the court limited the caseworker's testimony, he was permitted to testify about the gist of his observations which were contained in his records, that is, that the mother showed little emotion when she saw her child. We do not think that the caseworker's comment in his notes that he would not close his file because of what he observed would have changed the juvenile court's findings and conclusions.

The agency also argues that the court erred in not permitting testimony from an agency witness that she had found no entries in her notes reflecting that the mother did not contact the agency after February 17 until April. We find no error here since the witness was, in fact, permitted to testify in this regard to a large extent. Any error was harmless.

Finally, the agency argues that the juvenile court erred in precluding evidence regarding the mother's contacts with the agency near the time of trial regarding other services they offered for an unrelated matter. The agency contends that the evidence was relevant to the mother's credibility. Inasmuch as the agency has still failed to establish the specific relevancy of the contacts, we find no abuse of the juvenile court's discretion in determining the evidence was inadmissible.

 The child's argument that the juvenile court erred in excluding evidence of the bonding between the child and the adoptive parents must fail. The issue below was purely legal in nature, that is, the validity of the consent and its enforceability. The evidence was, therefore, properly excluded under Ariz.R.Evid. 401 and 402, 17A A.R.S. Unfortunately, the child's interests and the impact upon the child of the decisions regarding the consent were not before the court notwithstanding strong public policy arguments against vacating the consent. The child cites *Adoption of Holman*, 80 Ariz. 201, 295 P.2d 372 (1956), for the proposition that in determining whether or not to invalidate the consent the juvenile court should have considered his best interests. That case is entirely distinguishable. First, the trial court found that the mother had voluntarily, intelligently and knowingly consented to the adoption of her child and the supreme court agreed. The mother then changed her mind and tried to get her child back. Here, the juvenile court concluded that the evidence was insufficient to sustain that threshold finding. Second, *Adoption of Holman* was decided 14 years before the 1970 enactment of §§ 8–101, *et seq.* The new statute, its subsequent amendments and recent case law greatly limit the applicability of the case.

The juvenile court's order that the consent was void *ab initio* is vacated and the order is modified to reflect that the consent was voidable. In all other respects, the order is affirmed.

FERNANDEZ, C.J., and LACAGNINA, J., concur.