In the MATTER OF the ADOPTION
OF H.M.G., an infant child,

C.M.S., Appellant–Respondent,

v.

Terry W. GOFORTH and Rochelle D.
Goforth, Appellees–Petitioners.

No. 10A04–9203–CV–75.

Court of Appeals of Indiana,
Fourth District.

Jan. 19, 1993.

David A. Lewis, Jeffersonville, for appellant-respondent.

Cecile A. Blau, Douglas B. Bates, Stites & Harbison, Jeffersonville, for appellees-petitioners.

CONOVER, Judge.

Respondent–Appellant C.M.S. appeals the trial court's interlocutory decision in favor of Petitioners–Appellees Terry W. and Rochelle D. Goforth.

We affirm.

■ C.M.S. raises the following issue for our review:

whether pre-birth consent to adoption is valid under the Indiana Adoption Code.[1]

On December 20, 1991, C.M.S., then sixteen years old, along with her parents, signed an agreed order whereby she 1) consented to the adoption of her soon to be born child by the Goforths; 2) consented to the Goforths taking custody of the child upon, and at the time of, the birth of the child; 3) consented to the Goforths giving their surname to the child; 4) authorized the hospital to release the child to the Goforths upon its birth; and 5) agreed to accept the Goforths payment of all medical expenses attributable to the birth of the child. C.M.S. and her parents signed the agreed order after declining the opportunity to consult with counsel.

On January 6, 1992, C.M.S. gave birth to H.M.G. The same day she requested assistance from the social service staff of the hospital in making arrangements for H.M.G.'s adoption. Pursuant to her request, a medical social worker consulted with C.M.S. and explained hospital policy. The explanation of policy included a review of the form authorizing the hospital to release a child to someone other than the biological parent. The social worker asked

---

1. In her reply brief, C.M.S. attempts to raise the issue of whether the consent was properly worded. An issue may not be raised for the first time in a reply brief. *Senco Products, Inc. v. Riley* (1982), Ind.App., 434 N.E.2d 561. Otherwise, we would either have to deny the Goforths the right to respond to an issue not raised in the trial court nor addressed in the appellant's brief or place them in the position of having to petition for permission to submit an answer brief to C.M.S.'s reply brief, and so forth.

C.M.S. if she wanted to place H.M.G. for adoption. C.M.S. responded affirmatively and informed the social worker it was a private adoption. In the presence of her mother and the social worker, C.M.S. authorized the hospital to release H.M.G. to the Goforths' attorney by signing the release form.

On January 8, 1992, the Goforths' attorney accepted custody of H.M.G. pursuant to C.M.S.'s post-birth authorized release. He then placed H.M.G. in the Goforths' custody. At the time, C.M.S. was aware of the attorney's identity and purpose. The next day, the Goforths filed their petition to adopt H.M.G. with the Clark Superior Court No. 1.

C.M.S. later filed a petition for revocation of her prior consent followed by a writ of habeas corpus and a motion to dismiss the adoption petition. The trial court then held a hearing on the petitions filed by the parties.

After the hearing, the trial court entered an order denying the habeas corpus relief and the request to dismiss the adoption. It further ruled pre-birth consent to adoption was valid in Indiana, but recognized its ruling created new Indiana law. In consequence, it certified the cause for this interlocutory appeal, and granted the biological mother reasonable visitation rights in the interim. (R. 107–109).

C.M.S. contends the trial court erred in its interpretation of the statute. She further contends a pre-birth consent is void *ab initio* and cannot be ratified.

The statute in question, IC 31–3–1–6(b), unambiguously provides "[a] consent to adoption may be executed at any time after the birth of the child [in the presence of named parties]." The use of the word "may" does not refer to whether or not a parent executes a consent. In the first instance, a written consent must be executed before an adoption can be legal. The word "may" refers to when the consent to adoption is to be executed, i.e. before or after the child is born. The timing of the execution of the consent is clearly circumscribed by the phrase "any time after the birth of the child." There is no doubt the statute contemplates execution of the consent after the birth of the child; any other interpretation renders the clearly qualifying phrase meaningless. Under the statute, if consent is given it must be given after the birth of the child to insure such consent is a fully deliberative act on the part of the biological parent.

■ We disagree, however, with C.M.S.'s contention that failure to conform to the statute renders a consent void *ab initio*. We find the intent of the statute, which is designed to provide an equitable adoption procedure by protecting the rights of the adoptive parents and the child as well as those of the biological parents, is best served by finding the consent voidable.[2] A voidable consent is ratified by subsequent action. In the case of a pre-birth consent, such consent is ratified by a post-birth act which sufficiently manifests a present intention to give the child up for adoption. *See Matter of Pima City Juvenile Action* (1990), 167 Ariz. 303, 806 P.2d 892, 895.

The states of New York, Florida, and Arizona have reached the same conclusion we reach here.[3] In finding a pre-birth con-

---

2. The intent of legislation regulating adoptions is best described by the Court of Appeals of New York:

> This legislation is intended to provide a legal framework within which future adoptions can be undertaken with reasonable guarantees of permanence and with humane regard for the rights of the child, the natural mother and the adoptive parents.

*Matter of Sarah K.* (1985), 66 N.Y.2d 223, 496 N.Y.S.2d 384, 389, 487 N.E.2d 241, 246 (*quoting* 1972 N.Y.Legis.Ann. at 202, 203).

With regard to the concerns of adoptive parents, the court noted that "[t]he bond, the love, the intense emotion between adoptive parents and the child placed in their home, is created the very moment their dream is fulfilled and a child comes through the door of their home." *Id. (quoting* Memorandum from Office of Senate Temporary President, Bill Jacket, L.1972, ch. 639).

3. C.M.S. argues the decisions of these courts are distinguishable because the statutes interpreted therein were worded differently than our statute. Our review of the New York statute reveals it was silent as to the timing of consent; however, the court expressed the view that pre-birth consent was voidable. New York cases are instructive on the reasons behind ratification.

sent could be ratified, a New York appellate court noted:

> Plainly, both the statutory notice prerequisites and the mandate that a consent must be executed after the birth of the child are aimed at safeguarding the rights and interests of the biological parents in adoption proceedings, rather than affording some kind of protection for the public at large.

*Anonymous v. Anonymous* (A.D. 3 Dept. 1988), 139 A.D.2d 189, 530 N.Y.S.2d 613, 617.

In *In re Adoption of Long* (1952), Fla. S.Ct., 56 So.2d 450, the Florida Supreme Court stated:

> We cannot agree that the consent agreement, because signed before the birth, was so premature as to be inconsistent with the statutory provision that such a consent be executed by "the living mother of a child born out of wedlock...." It seems to us that this construction emphasized too much the form and too little the purpose. As we have seen, the welfare of the child has been adequately protected. *The matter of consent has mainly, if not absolutely, to do with the parent's right to the joys and blessings of parenthood, as distinguished from the child's right to proper rearing.*
>
> Under the statute, rights of the parent may be surrendered by a formally executed paper. *But at all times its purpose is the abandonment of the parent's right, and if this is done before birth and be afterward observed, recognized and honored by all parties, we think the purpose of the law is fulfilled by the parent's ratification.* (Emphasis Supplied).

56 So.2d at 452.

In *In re Adoption of Krueger* (1968), 104 Ariz. 26, 448 P.2d 82, the Supreme Court of Arizona opined:

> We are of the opinion that the purported consent executed by Barbara Steffen [biological mother] before the birth of the child was voidable for the reason that the statutes contemplate adoption only of a child in being and separate from its mother. *A voidable consent may be ratified by a subsequent act which sufficiently manifests a present intention to consent to the adoption of the child.* The authorization and release executed by Barbara Steffen after the child was born was sufficient ratification of her prior voidable consent. (Emphasis supplied).

448 P.2d at 86.

C.M.S. contends the pre-birth consent is void *ab initio* under the reasoning of *Unwed Father v. Unwed Mother* (1978), 177 Ind.App. 237, 379 N.E.2d 467, and the dissent in *Johnson v. Cupp* (1971), 149 Ind.App. 611, 274 N.E.2d 411.

In *Unwed Father* we considered the legal effect of a father's alleged oral promise to the unwed mother before the child was born. We held the father "could not have consented to the adoption of the child before the child was born" and the mother herself "would not have been held to a written (let alone verbal) intent, made six months prior to the birth of the child, to give the child up for adoption." 379 N.E.2d at 470. This holding is not inconsistent with our holding here; a parent is not held to a pre-birth consent absent ratification of such consent after the birth of the child.

In his dissent in *Johnson*, Judge Buchanan argued that pre-birth consents fail to allow for the birth mother's natural bond with a baby once the baby is born. This valid concern is not present where the pre-birth consent is only valid upon the birth parent's after-birth ratification.[4]

Both the Florida and Arizona statutes contemplated post-birth consents only. Cases from both Florida and Arizona are instructive on how our statute may be interpreted.

**4.** The *Johnson* dissent also raised other questions concerning problems arising because of the birth of physically impaired children or multiple births. These concerns may be assuaged by the wording of the consent and the status of medical science's pre-birth diagnostic capabilities.

We find the trial court erred in its interpretation of the statute. We also find a pre-birth consent is voidable. The question of post-birth ratification of a pre-birth consent document is a serious one which requires the protections provided by a full evidentiary hearing. In the present case, we will not presume to decide if ratification occurred from the limited record we have before us. Affirmed, and remanded for further proceedings consistent with this opinion.

CHEZEM, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

The majority readily acknowledges that under IND.CODE 31–3–1–6(b), "if consent is given it must be given after the birth of the child to insure such consent is a fully deliberative act on the part of the biological mother." *Majority opinion* at 875. Further, it is undisputed the consent must be written. IND.CODE 31–3–1–6(a). With its next breath, however, the majority seems to ignore its last by declaring that a post-birth "ratification" can be an acceptable substitute for post-birth written consent. Because the majority has disregarded the statute's requirement of written consent executed after the child's birth, I dissent.

Because the statute requires post-birth written consent, "issues" regarding the possibility of ratifying pre-birth written consent are irrelevant and illusory. The statute insists that no child may be adopted until and unless written consent is given after that child's birth. To be sure, written consent may be executed before the child's birth, but if not given after the child's birth as well, the child may not be adopted.

It is possible the majority and I do not really disagree on this matter, but only if the majority's definition of "ratification" includes "post-birth written consent." C.M.S. could have affirmed her intent to let the Goforths adopt her newborn in the company of archbishops, but without post-birth written consent her affirmation is unenforceable. She could have physically handed the child to the Goforths and begged them to adopt, but without post-birth written consent the child may not be adopted. Although these acts unquestionably "manifest a present intention to give the child up for adoption," they are legally insufficient to support an adoption petition unless also accompanied by the post-birth written consent. Any "ratification" falling short of the statutory requirement simply does not pass legal muster and must therefore be considered insufficient.

The record in this case demonstrates that before the birth of her child, C.M.S. had every intention of allowing the Goforths to adopt it upon its birth. She signed documents allowing the Goforths to take immediate custody upon the child's birth and to give the child the Goforth surname. She agreed to let the Goforths pay for the medical expenses. She authorized the hospital to release the child to the Goforths upon birth. After the child's birth, however, C.M.S. did not execute a written consent. Her signature appears on only two documents, which, whether considered separately or in unison, do not constitute consent as a matter of law. The first "relieve[d] the Hospital from further responsibility for the care and custody of the infant" by authorizing the hospital to release the child to the Goforth's attorney. *Record* at 100. The second "certif[ied] that ... [C.M.S.] ... requeste[d] the assistance of the Social Service Staff of Humana Hospital–University in making arrangements for the adoption of [her] infant [H.M.S.], born January 6, 1992." *Record* at 99.

Because C.M.S. did not execute a post-birth written consent as required by IND. CODE 31–3–1–6(b), I dissent. I would reverse both the trial court's refusal to grant the writ of habeas corpus and its denial of C.M.S.'s motion to dismiss the adoption petition.