IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 27 2005

COURT OF APPEALS
DIVISION TWO

LASHONDA M.,                        )
                                    )               2 CA-JV 2004-0022
                Appellant,          )               DEPARTMENT A
                                    )
        v.                          )               O P I N I O N
                                    )
ARIZONA DEPARTMENT OF               )
ECONOMIC SECURITY and               )
ELIJAH M.,                          )
                                    )
                Appellees.          )
                                    )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. J-16197600

Honorable John S. Leonardo, Judge

AFFIRMED

Curtis & Cunningham
  By George Haskel Curtis                                         Tucson
                                                    Attorneys for Appellant

Terry Goddard, Arizona Attorney General
  By Dawn R. Williams                                            Tucson
                                            Attorneys for Appellee Arizona
                                          Department of Economic Security

B R A M M E R, Judge.

¶1        Appellant Lashonda M., born September 13, 1987, appeals from the juvenile court's order of March 16, 2004, terminating her parental rights to her son, Elijah M., born November 26, 2001.[1] The court entered its order following a four-day jury trial at which the jury found by clear and convincing evidence that severance was warranted on the dual grounds of neglect, A.R.S. § 8-533(B)(2), and length of time in a court-ordered, out-of-home placement, § 8-533(B)(8)(a). The juvenile court denied a motion for new trial, and Lashonda now raises on appeal the same five issues she unsuccessfully urged in her motion.

**Background**

¶2        Lashonda gave birth to Elijah ten weeks after her fourteenth birthday. She initially, but inaccurately, identified the baby's father as Quintin R., the forty-year-old boyfriend or former boyfriend of Lashonda's mother.[2] A Child Protective Services (CPS) investigator testified that Quintin had molested Lashonda when the family lived in Texas and that Texas authorities had sought to prevent any further contact between Quintin and Lashonda's mother. The family then moved from Texas to Arizona, where Quintin remained involved with Lashonda's mother and the family.

---

[1]More specifically, Lashonda's appeal is from "the jury verdict dated February 24, 2004, the denial of her Motion for New Trial dated March 15, 2004, and the final order terminating her parental rights dated March 16, 2004."

[2]Paternity testing later established that Quintin is not Elijah's father, and the court dismissed the dependency petition as to him. Quintin is the father of Lashonda's younger half-sister Amera, who was born when Lashonda was approximately thirteen years old.

2

¶3        Lashonda came to the attention of CPS in Arizona briefly in April 2001, soon after the family arrived from Texas.[3]  Later, CPS received another report about Lashonda in 2002, when Elijah was ten months old.  Lashonda reported being distressed by Quintin's continued, frequent presence in her mother's life, and Lashonda's mother asked to have Lashonda removed from the home because of stress and conflict between them.  In September 2002, the Arizona Department of Economic Security (ADES) filed roughly simultaneous petitions alleging that both Lashonda and Elijah were dependent children.  Elijah was adjudicated dependent on October 4, 2002, and ADES filed its motion to terminate parental rights thirteen months later.

¶4        In the interim, Elijah and Lashonda had moved through a succession of placements.  They were initially placed together in a group home for teenaged mothers, but Lashonda's noncompliant and irresponsible behavior led ADES to remove Elijah from her custody in January 2003.  Elijah was placed in two successive foster homes followed by a group home where he remained as ADES attempted to find a permanent, adoptive home for him.  The ongoing caseworker testified that, since the inception of this dependency action, Lashonda had been placed in nine different group homes, some more than once, and had run away, either from school or from her placement, more than forty times.  Lashonda had been

---

[3]According to one CPS report admitted in evidence, Lashonda also had previously been "a dependent child in 1992-1993 due to physical abuse by her father, and failure to protect by her mother ([against] the physical abuse by father, and sexual abuse by a relative, known to the mother as a child molester)."

offered an array of services and had participated to some extent in many of them, but she was never more than partially compliant with her case plan. Her frequent running away, the case manager wrote, had "prevented her from moving forward and making progress."

¶5 By its verdict, the jury found Lashonda had neglected Elijah and had substantially neglected or willfully refused to remedy the circumstances that had caused him to be in an out-of-home placement, despite diligent efforts by CPS to provide appropriate reunification services. Additionally, the jury found specifically that terminating Lashonda's parental rights was in Elijah's best interest.

## Legal Issues

¶6 Lashonda first contends the juvenile court erred by refusing to give the following three jury instructions she had requested:

> The right to the custody and control of one's child is a fundamental constitutional right that does not evaporate simply because the natural parents have not been model parents or have lost temporary custody of their child to the State.

> Termination of the parent-child relationship should not be considered a panac[e]a but should be resorted to only when concerted efforts to preserve the relationship fail.

> Termination of parental rights is not a favored result and should be considered only as a last resort.

¶7 We review a trial court's refusal to give a jury instruction for an abuse of the court's discretion "and will reverse only if the instructions, taken as a whole, misled the

4

jurors." *State v. Petrak*, 198 Ariz. 260, ¶ 9, 8 P.3d 1174, 1178 (App. 2000).[4] On review we consider jury instructions in their entirety and will not find error if the trial court has "refuse[d] to give a requested instruction that is covered adequately by the given instructions." *Haynes v. Syntek Fin. Corp.*, 184 Ariz. 332, 341, 909 P.2d 399, 408 (App. 1995). "In determining whether the instructions given were correct, the test is whether, considering the instructions as a whole, the jury was properly guided in arriving at a correct decision." *Pima County v. Gonzalez*, 193 Ariz. 18, ¶ 7, 969 P.2d 183, 185 (App. 1998). That test was met in this case.

¶8        Although Lashonda's requested instructions are correct statements of law from appellate decisions, we find no abuse of discretion in the juvenile court's refusal to give them. The court properly instructed the jury on each element of the statutory grounds alleged for termination, on the correct standard of proof, and on the meaning of pertinent terms including neglect, clear and convincing evidence, and diligent effort to provide reunification services. The refused instructions were correct but unnecessary statements of law, providing broader, contextual information that arguably had already been legislatively factored into the higher standard of proof required to terminate a parent's rights. "Every correct statement of law from appellate decisions need not be included in an instruction so long as the instruction

---

[4]Lashonda's opening brief does not contain the required statements of the standards of appellate review applicable to each issue with appropriate citations of authority. We commend to counsel's attention Rule 91(A), Ariz. R. P. Juv. Ct., 17B A.R.S., and Rule 13(a)(6), Ariz. R. Civ. App. P., 17B A.R.S.

accurately communicates the law." *State v. Rosas-Hernandez*, 202 Ariz. 212, ¶ 35, 42 P.3d 1177, 1185 (App. 2002). "The test is whether the instructions, viewed in their entirety, adequately set forth the law applicable to the case." *Id.* ¶ 31, 42 P.3d at 1185. Because the juvenile court's instructions to the jury did so in this case, we find no abuse of its discretion in refusing to give the three instructions at issue.

¶9 Second, Lashonda contends the court did not properly instruct the jury on the meaning of neglect for purposes of § 8-533(B)(2). She argues the juvenile court should have given her proposed instruction, drawn from language in *In re Pima County Juvenile Action No. S-111*, 25 Ariz. App. 380, 543 P.2d 809 (1975), stating that terminating parental rights on the basis of neglect requires a showing of "serious harm to the child, be it physical, mental or 'moral.'" *Id*. at 390, 543 P.2d at 819.

¶10 At the time *Pima County No. S-111* was decided, the term "[n]eglected" was defined by A.R.S. § 8-531(9) as "refer[ring] to a situation in which the child lacks proper parental care necessary for his health, morals and well-being." 1972 Ariz. Sess. Laws, ch. 142, § 9. That definition has since been superseded by A.R.S. § 8-201(21), which now defines "neglect" or "neglected" to mean "the inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare . . . ." Incorporating the language of § 8-201(21) nearly verbatim, the juvenile court properly instructed the jury that "neglected" meant Lashonda "was unable or unwilling to provide the

6

child with supervision, food, clothing, shelter and medical care, and that this caused a substantial risk of harm to the child's health or welfare."[5]

¶11      A court is required to refuse an instruction that does not correctly state the law, *Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 880 P.2d 1103 (App. 1993), and need not give "additional instructions that do nothing more than reiterate or enlarge the instructions [given] in defendant's language." *State v. Salazar*, 173 Ariz. 399, 409, 844 P.2d 566, 576 (1992). Because Lashonda's requested instruction was not a correct statement of current law and served no legitimate purpose, the juvenile court properly refused it. *See Callender; Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 778 P.2d 1312 (App. 1989).

¶12      Next, Lashonda contends that CPS's placing her and Elijah first in a group home for teenaged mothers was an inappropriate and unhelpful placement. She claims that, by not placing them together in a foster home instead, ADES did not make a concerted and diligent effort to preserve their relationship, as A.R.S. § 8-846(A) requires. She asserts that living in a group home had an "inappropriate psychological effect" on her, and she blames "the stress of residing in group homes" for her noncompliance with her case plan.

---

[5]During the settling of jury instructions, Lashonda's counsel argued that the instruction the court proposed to give did not sufficiently inform the jury that, to warrant termination on the basis of neglect, the "harm to the child must be serious." When the court noted that its proposed instruction used the term "substantial," counsel acknowledged: "I agree, and it's close. I just think that the Arizona law says serious rather than substantial."

¶13　　　　With this issue, Lashonda is essentially asking us to reweigh the evidence presented with respect to the state's diligence, which is not the function of an appellate court. *See State v. Lucero*, 204 Ariz. 363, 64 P.3d 191 (App. 2003); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 53 P.3d 203 (App. 2002); *Premier Fin. Servs. v. Citibank*, 185 Ariz. 80, 912 P.2d 1309 (App. 1995). Rather, we look only to determine whether there was substantial evidence to sustain the jury's verdict. *See Mealey v. Arndt*, 206 Ariz. 218, 76 P.3d 892 (App. 2003); *Callender; Hamilton v. Municipal Court of City of Mesa*, 163 Ariz. 374, 788 P.2d 107 (App. 1989). And we view the evidence in the light most favorable to upholding the verdict. *See In re Maricopa County Juvenile Action No. JD-5312*, 178 Ariz. 372, 873 P.2d 710 (App. 1994).

¶14　　　　The jury heard evidence about the various placements Lashonda had had, including testimony by a CPS placement specialist that CPS had done all it could with the resources at its disposal to find a foster placement for Lashonda and Elijah together but that foster homes are very hard to find for adolescents and especially so for adolescents with children. The CPS investigator who had first removed Lashonda and Elijah from Lashonda's mother's home testified that a foster placement that would have taken mother and son together was "extremely rare" and that she had not been aware of any foster homes at the time Lashonda and Elijah were removed that could have taken a teenaged mother and her child.

8

¶15 Although Lashonda did not like living in the first group home placement with Elijah, the case manager testified that it was the best available option for keeping her and Elijah together under the circumstances:

> there was not anything else available, a[nd] it was a specific home for pregnant teens and also teens with children; and that the staff worked directly with the clients and their children to help on parenting issues and to be there to give advi[c]e and provide a safe environment for the parents and their children.

But, because of Lashonda's repeatedly running away from the group home—once taking Elijah with her, other times leaving him behind for others to care for, including once overnight—CPS eventually determined that it was in Elijah's best interest to be removed from Lashonda's custody and placed in a foster family if possible.

¶16 In closing argument Lashonda presented to the jury the same contention she now presents on appeal—that ADES had not made diligent efforts to preserve or reunify the family because it had not found a suitable foster home or other family placement in which a parent figure could help and support Lashonda in raising Elijah. Having heard all the evidence and the arguments of counsel, the jury expressly found that CPS had made a diligent effort to provide appropriate services to reunite Lashonda and Elijah. Because conflicts in the evidence are for the fact-finder to resolve and because substantial evidence in the record supports its resolution in this case, we defer to the jury's finding and reject Lashonda's argument. *See Jesus M.; Flood Control Dist. of Maricopa County v. Hing*, 147 Ariz. 292, 709 P.2d 1351 (App. 1985).

¶17 Fourth, Lashonda contends the juvenile court erred in permitting the state to introduce, on the issue of the child's best interests, evidence of a potential adoptive home for Elijah that had been identified only days earlier. *See generally Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 982 P.2d 1290 (App. 1998) (fact-finder may consider immediate availability of an adoptive placement as weighing in favor of severance); *In re Maricopa County Juvenile Action No. JS-6520*, 157 Ariz. 238, 756 P.2d 335 (App. 1988) (best interests of child in foster-adoptive home favored severance so child could be freed for adoption).

¶18 In testimony on the third day of trial, the CPS caseworker stated that, at the beginning of the previous week, she had learned of an available, licensed, "foster[-]to[-]adopt placement" that was potentially suitable for Elijah. Lashonda objected based on lack of prior disclosure, but the court permitted the testimony because the information had only recently come to light. In its minute entry denying a new trial, the court noted that it had then similarly allowed Lashonda to introduce evidence of a potential foster home for Lashonda and Elijah that had only recently been identified. Thus, a Devereaux Foundation employee testified in Lashonda's case that, four to six weeks earlier, her agency had located a therapeutic foster home that would accept both Lashonda and Elijah. As the juvenile court wrote in denying Lashonda's motion for new trial: "The Court admitted evidence of both potential placements as clearly relevant to the best interests of the child, although neither was disclosed until late in the case."

10

¶19 A trial court has broad discretion in admitting or excluding evidence, and we will not disturb its decision absent a clear abuse of its discretion and resulting prejudice. *Gonzalez; In re Pima County Juvenile Severance Action No. S-2698*, 167 Ariz. 303, 806 P.2d 892 (App. 1990). Generally, an abuse of discretion "is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. Tucson City Court*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (1982).

¶20 In its minute entry, the juvenile court explained at some length its reasons for concluding, as to both the state's evidence of a possible adoptive home for Elijah and Lashonda's evidence of a possible therapeutic foster home for herself and Elijah, that the relevance and probative value of the evidence outweighed any possible prejudice the opposing party might sustain. We find no manifest abuse of the court's discretion in admitting the evidence, despite the lack of timely disclosure. And, although Lashonda objected to admission of the evidence, we note that she did not request any accommodation from the court—not additional time nor even so much as a brief recess—to permit her to investigate, evaluate, or respond to the state's evidence concerning the possible adoptive placement for Elijah, suggesting she perceived little if any real prejudice to her case.

¶21 Finally, Lashonda claims the juvenile court should have granted her motion for new trial based on the misconduct of a juror who failed to reveal until after the verdict that he had donated "his time, as well as . . . at least a Christmas Tree each Christmas" to Casa de los Niños. The grant or denial of a mistrial or new trial on grounds of juror misconduct

11

is committed to the sound discretion of the trial court. *Elliott v. Videan*, 164 Ariz. 113, 791 P.2d 639 (App. 1989); *Cota v. Harley Davidson*, 141 Ariz. 7, 684 P.2d 888 (App. 1984). We review a juvenile court's ruling on such a motion for a clear abuse of discretion, *Brooks v. Zahn*, 170 Ariz. 545, 826 P.2d 1171 (App. 1991), and we find none here.

¶22        On voir dire examination, the venireman in question remained silent when Lashonda's counsel asked the panel of prospective jurors whether any of them "donate[d] money to be used for the protection of children, either through the tax return, purchasing a special license plate or through private donations." The juror likewise did not respond to the court's final, open-ended question whether there was any other important information not elicited by previous questioning that counsel might wish to know about their qualifications as jurors. After the verdict had been announced, the court invited the jurors to remain in the jury room to converse informally with the court and counsel, and it was then that the juror allegedly disclosed his involvement with Casa de los Niños.

¶23        Lashonda claims the juror's failure to reveal the information on voir dire constituted misconduct, warranting a new trial. However, jurors are not obliged to volunteer information or respond to questions not posed to them. *United States v. Kerr*, 778 F.2d 690 (11th Cir. 1985); *Brooks*. Rather, to constitute misconduct, the juror must have "conceal[ed] facts pertaining to his qualifications or bias on proper inquiry during voir dire." *State v. Dickens*, 187 Ariz. 1, 16, 926 P.2d 468, 483 (1996); *Board of Trustees v. McEwen*, 6 Ariz. App. 148, 430 P.2d 727 (1967).

12

**¶24** In denying the motion for new trial, the juvenile court rejected Lashonda's claim on several grounds. First, it found Lashonda had not established that misconduct had occurred, because it was unclear that the juror was obliged to respond to counsel's voir dire question. The question asked about the donation of money, not time or in-kind items such as Christmas trees. And, the court wrote: "If Juror A[.] did not perceive his donations as for the *protection* of children, but for some other purpose, there would be neither perjury nor a willful failure to respond fully, and thus no misconduct." Nor, the court found, had Lashonda demonstrated prejudice, which will not be assumed but must be shown or "appear probable from the record," *Cota*, 141 Ariz. at 10, 684 P.2d at 891, before a new trial is warranted. *See also State v. Davolt*, 207 Ariz. 191, 84 P.3d 456 (2004).

**¶25** The trial court is best positioned to make the determination whether a new trial is necessary. *See Cota.* After review, we are unable to say the juvenile court abused its discretion in concluding that a new trial was not warranted here because Lashonda had failed to show either actual misconduct or prejudice. By not supporting her allegations with an affidavit from the juror or even asking the court to question the juror further, Lashonda failed to demonstrate that her claim had any arguable merit. *See McEwen* (motion for new trial and later motion for reconsideration both supported by juror affidavits, which were admissible to show whether juror failed to disclose bias and prejudice on voir dire); *Foster v. Camelback Mgmt. Co.*, 132 Ariz. 462, 464, 646 P.2d 893, 895 (App. 1982) ("[no] proof short of

13

testimony or an affidavit will suffice to set aside a jury's verdict for [juror] misconduct," and motion for new trial properly denied in their absence).

**¶26** Because they are not clearly erroneous, *Brooks*, we defer to the juvenile court's findings that Lashonda failed to show that the juror concealed any information, much less information showing bias or prejudice, and that she failed to meet her burden of showing any resulting prejudice to the outcome at trial.

**¶27** Affirmed.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
PETER J. ECKERSTROM, Judge

14