NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KEITH R., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.K., *Appellees.*

No. 1 CA-JV 19-0206
FILED 12-19-2019

Appeal from the Superior Court in Maricopa County
No. JD531369
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Chief Judge Peter B. Swann delivered the decision of the Court, in which Acting Presiding Judge David D. Weinzweig and Judge Joshua Rogers[1] joined.

---

**S W A N N**, Judge:

**¶1**         Keith R. ("Father") challenges the superior court's order adjudicating his child, A.K., dependent. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         In July 2018, the Department of Child Safety ("DCS") took custody of A.K. at her birth because Crystal K. ("Mother")[2] had a history of substance abuse and had neglected her two older children.[3] DCS filed a dependency petition alleging "John Doe" as A.K.'s father because Mother stated she did not know his identity.

**¶3**         Despite this claim, Mother told Father in late-July that he was likely A.K.'s father and that A.K. was in DCS custody. On September 28, 2018, Father's mother called DCS, and the case manager spoke with Father. At that time, DCS informed Father about an October court hearing for "John Doe," but Father did not attend the hearing. Father completed paternity testing at the first scheduled opportunity on November 1, which confirmed he is A.K.'s biological father. DCS therefore amended its dependency petition in December to include Father, alleging he failed to protect A.K.

---

[1]       The Honorable Joshua Rogers, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]       Mother's parental rights were terminated but she is not a party to this appeal.

[3]       Father is not the biological father of Mother's two older children.

from Mother's substance abuse and that he did not establish or maintain a parental relationship with A.K. or provide her with necessities.

¶4 In January 2019, Father completed a urinalysis test to rule out drug use, and it returned negative. DCS then referred Father for a parent aide with visitation. In February, DCS also offered Father extra visits with A.K. Father, however, did not meet with DCS to learn how to take advantage of the extra visits and did not take advantage of them for almost two months. Although Father initially participated in the parent-aide service, his commitment waned, and he had only met three of fifteen parent-aide goals by the dependency hearing.

¶5 In May 2019, Father moved to have A.K. placed in his custody under Rule 59, Arizona Rules of Procedure for the Juvenile Court. In June, the superior court held a combined, contested dependency and Rule 59 hearing, and issued a ruling adjudicating A.K. dependent and denying Father's request to return A.K. to his custody. Father appealed.

## DISCUSSION

### 1. Dependency Findings and Order

¶6 On appeal, Father challenges the superior court's factual findings as being clearly erroneous and contrary to the evidence, asserting A.K. should have been placed in his custody, and DCS "lacked the constitutional authority to require [him] to engage in 'services' as a requisite" to his right to parent A.K. Additionally, Father asserts that insufficient evidence supports the court's dependency order.

¶7 The superior court must find a child dependent by a preponderance of the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 490 ¶ 23 (App. 2015). A dependent child is one who is adjudicated to be "in need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control" or a child "who is not provided with the necessities of life, including adequate food, clothing, shelter, or medical care." A.R.S. § 8 –201(15)(a)(i)–(ii). We review the court's dependency determination for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Louis C.*, 237 Ariz. at 488 ¶ 12. The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004).

¶8        Father first challenges the court's finding that he neglected A.K. by failing to protect her from Mother's drug use. Specifically, the court found that Father "had some knowledge that Mother was using drugs during the pregnancy." Although Father knew Mother used drugs during their relationship, he maintained at trial that he had no knowledge Mother was pregnant and only found out about A.K.'s existence a few weeks after her birth. He further testified that the parents' relationship ended when Mother would have been about one month pregnant, specifying he "didn't talk to [Mother] from about November [2017] until . . . after [A.K.] was born." Father's testimony is consistent with Mother's disclosure to DCS that she did not know she was pregnant until May 2018. DCS presented no evidence to refute Father's testimony. Thus, while Father knew Mother used drugs during their relationship, no reasonable evidence supports an inference that their relationship extended past November 2017 or that Father knew Mother was pregnant. Therefore, the court's finding cannot support the dependency by a preponderance of the evidence, and DCS failed to prove its first allegation in the dependency petition.

¶9        Father also challenges the court's conclusion that he neglected A.K. by failing to establish a parental relationship with her and failing to provide her with necessities and supervision. Regarding this allegation, the superior court found that Father "delayed contacting the Department knowing [A.K.] was in care[,] . . . delayed establishing paternity[,]" and failed to successfully participate in the parent-aide service once paternity was established. Reasonable evidence supports these findings.

¶10        Father knew of A.K.'s birth by "late July" 2018; he also knew that he was her potential father and that she was in DCS custody. The court found that despite this knowledge, Father delayed contacting DCS until his mother did so on September 28, 2018. To be sure, Father testified he was waiting to contact DCS because he "was just waiting for [Mother] to get her kids back." Although Father also testified that he contacted DCS before September 28, the case manager responded that DCS had no record of Father calling before September 28.[4] The court resolved this conflicting factual evidence in favor of DCS, and we will not reweigh it on appeal. *See*

_____

[4]        Father testified that he called DCS a few times "with no success." A few minutes later Father testified that he "talked to somebody [from DCS] on like three separate occasions" and he or she was not helpful. Father later testified that he did speak with DCS before September 28 and a representative told him to complete an acknowledgement of paternity.

*Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52 ¶ 11 (App. 2009) (Court of Appeals "will not reweigh the evidence or substitute [its] evaluation of the facts.").

**¶11** Regarding paternity, Father's delay in contacting DCS for two months also delayed the case manager's ability to refer him for paternity testing.[5] *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251 ¶ 25 (2000) ("The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity."). However, once DCS referred Father for paternity testing, he completed it within two weeks, at the first scheduled opportunity.

**¶12** Finally, the court found that Father failed to successfully participate in the only required service—the parent-aide service. Specifically, the court found that

> Father was lackadaisical in his participation in the Parent Aide service. Father's engagement in this service was critical as it was the only service that was required for reunification. Father had 15 of 18 capacities diminished. Father was able to enhance five of those capacities at the midpoint. Father has since canceled or failed to attend several skill sessions and canceled or failed to attend four visits with the child in May. This has resulted in Father's regression with the Parent Aide service. Father failed to take advantage of additional visitation that was offered by the Department. Father's disinterest in parenting the child has delayed [his] progression in the Parent Aide service. Father's Parent Aide testified that Father cannot safely parent the child full time on his own at this point.

Reasonable evidence supports these findings. *See Pima Cty. Juv. Action No. S-114487*, 179 Ariz. 86, 96 (1994) (a parent "must take concrete steps to establish the legal or emotional bonds linking parent and child."). Overall, the record supports the court's conclusion that A.K. was dependent as to Father.

---

[5] Father testified that before September 28 he "filled [out a paternity acknowledgment], sent it in, and they sent [him] a letter back[.]" However, he "forgot the name of the place" he sent the form to and did not submit the application or return letter into evidence at the dependency hearing.

### 2. Evidentiary Issue

**¶13**　　　　Father next argues that the superior court abused its discretion in admitting documents showing his prior charge of accidental discharge of a weapon because the charge was irrelevant and did not relate to the allegations in the dependency petition. Father also classifies the introduction of his criminal conviction at trial as "new allegations" that "deprived Father of his due process right to notice."

**¶14**　　　　This court "will not disturb a trial court's ruling on the admission or exclusion of evidence unless a clear abuse of discretion is present and prejudice resulted therefrom." *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42 ¶ 11 (App. 2008). The superior court abuses its discretion when exercising its discretion in a manner that is either "manifestly unreasonable" or based on untenable grounds or reasons. *Id.* Harmless error is not grounds for reversal; an error is harmless when "the reviewing court can say beyond a reasonable doubt that the error did not contribute to the verdict." *Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 73 ¶ 12 (App. 2015). Finally, "[d]ue process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Yavapai-Apache Nation v. Fabritz-Whitney*, 227 Ariz. 499, 509 ¶ 48 (App. 2011).

**¶15**　　　　Here, although Father likens the evidentiary admissions of his conviction as new allegations, DCS had previously disclosed its intention to admit information about his prior criminal case. Additionally, Father does not argue how the admissions harmed him. In adjudicating A.K. dependent, the superior court made no specific findings regarding Father's criminal history. Moreover, the record shows that, even without evidence of Father's criminal history, reasonable evidence supports the superior court's order. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239 ¶ 17 (App. 2012) (finding no prejudice when other overwhelming evidence supported father's abuse of the children).

### CONCLUSION

**¶16**　　　　We therefore affirm.

