178 P.3d 511

KIMU P. and Blair P., Appellant,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Zion P., Caleb P., Appellees.

No. 1 CA–JV 06–0238.

Court of Appeals of Arizona, Division 1, Department E.

March 20, 2008.

Review Denied Sept. 23, 2008.

Terry Goddard, Attorney General, by Kathleen E. Skinner, Assistant Attorney General, Mesa, Attorneys for Appellee Arizona Department of Economic Security.

Sandra L. Massetto, Phoenix, Attorneys for Appellant Blair P.

David W. Bell, Mesa, Attorney for Appellant Kimu P.

## OPINION

OROZCO, Judge.

¶ 1 Kimu P. (Mother) and Blair P. (Father) (collectively Parents) appeal the juvenile court's order terminating their parental rights to C.P. and Z.P. Parents' rights to the children were terminated after a jury found that the parents had neglected or willfully abused the children pursuant to Arizona Revised Statutes (A.R.S.) section 8–533(B)(2) (2007). The jury also found that severance was in the children's best interests. On appeal, Parents argue that the juvenile court abused its discretion by barring all evidence at the severance trial relating to I.P., a child who was born to Parents during the termination proceedings. Additionally, Parents argue that the juvenile court erred in denying their motion to dismiss the termination petition because a termination action cannot be brought pursuant to A.R.S. § 8–533 when there is an ongoing dependency action. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Parents are strict vegans and maintained a diet for their family consisting entirely of fruits, vegetables, grains, and liquid nutritional supplements. Although the family ate three meals a day, the amount of food the family consumed became increasingly smaller with each subsequent meal. Parents also maintained a strict exercise regimen for the children after each meal, which included sit-ups, push-ups, and "crab walking". The family's contact with people outside the home was very limited. Parents isolated the children from family and neighbors and the children were home-schooled. Parents also distrusted allopathic medicine and refrained from all conventional medical treatment. Instead, Parents routinely consulted a naturopathic doctor in Wisconsin over the telephone for diagnoses and treatment.

¶ 3 On April 23, 2005, Parents called 911 and reported that their three-year old daughter, Z.P., was having seizures. Paramedics transported Z.P. to Scottsdale Healthcare Osborn. The emergency room physician was concerned for Z.P., who he described as being severely malnourished, extremely emaciated and almost "skeletal in appearance." At the time, Z.P. weighed only twelve pounds. Blood tests administered in the emergency room revealed that Z.P. had critically low blood sugar and sodium levels. Given her grave condition, Z.P. was immediately airlifted to the Pediatric Intensive Care Unit (ICU) at Phoenix Children's Hospital.

¶ 4 At Phoenix Children's Hospital, the treating physician spoke at length with Father about Z.P.'s condition. Father admitted to the physician that Z.P. had never received any previous medical attention or childhood immunizations. Father attributed Z.P.'s extreme appearance to malabsorption, which is the inability to absorb the nutrients from ingested foods. However, the treating physician found this implausible as Z.P. did not exhibit symptoms normally associated with malabsorption, such as frequent bowel movements and vomiting. Rather, the physician concluded that Z.P.'s low weight and short stature were largely "environmental" and the result of "chronic nutritional deprivation."

Z.P. was admitted to the hospital for severe malnutrition.

¶ 5 In light of Z.P.'s condition, Phoenix Children's Hospital staff were concerned about the welfare of Parents' two other children, daughter M.P. and son C.P., and requested that they be brought to the hospital for an examination. After Parents refused, the Arizona Department of Economic Security (ADES) served a temporary custody notice on Parents and the two children were brought to the hospital to be examined. Like Z.P., M.P. and C.P. appeared "extremely thin." M.P., who was eleven years old, weighed thirty-seven pounds, which is the average weight of a five-year old. Similarly, C.P., who was nine years old, weighed only thirty-one pounds, the average weight of a three-and-a-half year old. Both children's heights were also "severely abnormal" for their ages. Mother attributed their size to malabsorption much as Father had with Z.P. However, the treating physician ruled this out as neither child exhibited the typical symptoms. As with Z.P., the treating physician diagnosed M.P. and C.P. with severe malnutrition and both children were admitted to the hospital.

¶ 6 All of the children were taken into temporary custody and ADES filed a dependency petition as to all three children. Shortly thereafter, before the juvenile court ruled on the dependency petition, ADES filed a petition for termination of parental rights, alleging, under A.R.S. § 8–533(B)(2), that Parents had neglected and/or willfully abused the children. ADES further alleged that severance was in the children's best interests.

¶ 7 While hospitalized, the children maintained their vegan diets, but were fed a "normal" amount of calories. This proved successful as all three children, within weeks of hospitalization, gained weight and grew taller. In the time they were hospitalized, the children also became more energetic and active. Upon release from the hospital, the children were placed in a licensed foster home. The children were happy in their foster placement. C.P. developed such an attachment to his foster family that he began referring to his foster parents as his parents.

¶ 8 After a five day jury trial, the jury found that Parents had neglected or willfully abused all three children. Furthermore, the jury found that severance was in the best interests of C.P. and Z.P., but not M.P. The juvenile court accordingly terminated Parents' rights to C.P. and Z.P. Parents timely appealed.[1] We have jurisdiction pursuant to A.R.S. §§ 8–235 (2007) and 12–120.21 (2003), and Arizona Rule of Procedure for the Juvenile Court 88.

## DISCUSSION

### A. Exclusion of Evidence of I.P.

■ ¶ 9 During the severance proceedings, Mother gave birth to another child, I.P., who was subsequently found to be dependent as to Parents. However, the parties agreed I.P. would remain in Parents' physical custody. Prior to trial, ADES filed a motion *in limine* requesting that the juvenile court exclude all evidence relating to the dependency and placement of I.P. during the severance trial. The juvenile court granted the motion.

■ ¶ 10 Although Parents concede that evidence of I.P.'s dependency and placement bears no relevance to the neglect and willful abuse ground of termination under which their parental rights were severed, they argue that such evidence was relevant to whether termination was in the children's best interests and, therefore, should have been presented to the jury. Arizona Rule of Evidence 401 [2] provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The central issue when determining the best interests of a child in a termination action is whether the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6, 100 P.3d 943, 945 (App.2004) (citations omitted). Therefore, "the best interests inquiry focuses primarily upon the interests of the child, as

distinct from those of the parent." *Kent K. v. Bobby M.*, 210 Ariz. 279, 287, ¶ 37, 110 P.3d 1013, 1021 (2005).

■ ¶ 11 We will not disturb a trial court's ruling on the admission or exclusion of evidence unless a clear abuse of discretion is present and prejudice resulted therefrom. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82–83, ¶ 19, 107 P.3d 923, 928–29 (App.2005) (citations omitted). A trial court abuses its discretion when it exercises discretion in a manner that is either "manifestly unreasonable" or based on untenable grounds or reasons. *Id.* at 83, ¶ 19, 107 P.3d at 929 (quoting *Quigley v. Tucson City Court*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (App.1982)).

¶ 12 In this case, evidence regarding a child born during the proceedings was not relevant to the determination of whether termination was in C.P. and Z.P.'s best interests. I.P. was born well into the proceedings and had not suffered the neglect and abuse that C.P. and Z.P. had experienced. In fact, although I.P. remained in Parents' physical custody, Parents never cared for the child independent of the services provided by ADES. The fact that Parents were caring for I.P. did not demonstrate that it was in C.P. or Z.P.'s best interests to have the parental relationship maintained. Accordingly, the juvenile court did not abuse its discretion in excluding evidence regarding the dependency and placement of I.P.

### B. Filing of a Petition for Termination Pursuant to A.R.S. § 8–533 vs. A.R.S. § 8–862

■ ¶ 13 Shortly after ADES filed its termination petition, Parents moved to dismiss the petition, arguing ADES was precluded from filing a petition for termination under A.R.S. § 8–533 when a dependency petition was previously filed under A.R.S. § 8–841 (2007) and no finding of dependency had yet been made. Because ADES had already filed a dependency petition, Parents argued that ADES could only pursue termination by

---

1. M.P. is not a party to this appeal.

2. "[T]he admissibility of evidence shall be governed by the Arizona Rules of Evidence." Ariz. R.P. Juv. Ct. 45(a).

way of a motion for termination under A.R.S. § 8–862(D)(1) (2007). By filing a petition for termination while there was an ongoing dependency action, Parents argued that ADES effectively bypassed the procedural requirements set forth in the dependency statutes and, therefore, violated their due process rights. The juvenile court denied Parents' motion, ruling that an ongoing dependency action did not preclude ADES from filing a termination petition under A.R.S. § 8–533. On appeal, Parents contend that the juvenile court erred in denying their motion. We review a juvenile court's interpretation of a statute de novo. *Linda V. v. Ariz. Dep't of Econ. Sec.,* 211 Ariz. 76, 78, ¶ 7, 117 P.3d 795, 797 (App.2005).

¶ 14 Our juvenile statutes provide for two separate procedural mechanisms by which a termination of parental rights may be obtained. *See* A.R.S. § 8–533; A.R.S § 8–862(D)(1). Section 8–533(A) states:

Any person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, a relative, a foster parent, a physician, *the department of economic security* or a private licensed child welfare agency, may file a *petition* for the termination of the parent-child relationship alleging grounds contained in subsection B of this section.

(Emphasis added.) While there are no procedural prerequisites to filing a termination petition under A.R.S. § 8–533, the alternative procedural mechanism by which a termination may be obtained only arises in the course of a dependency matter. After a child has been found dependent, the juvenile court must "hold a permanency hearing to determine the future permanent legal status of the child." A.R.S. § 8–862(A). At the hearing, if the court determines that termination of parental rights would be in the best interests of the child, the court must "[o]rder [ADES] or the child's attorney or guardian ad litem to file within ten days after the permanency hearing a motion alleging one or more of the grounds prescribed in § 8–533 for termination of parental rights." A.R.S. §§ 8–862(B)(1), (D)(1).

¶ 15 Although A.R.S. § 8–533 has served as a mechanism for the termination of paren-

tal rights since 1970, *see* 1970 Ariz. Sess. Laws, ch. 153, § 2, the legislature enacted A.R.S. § 8–862 in 1997 in an effort to "accelerate the process by which parental rights are terminated so that children can be adopted more readily and at an earlier age." *Mara M. v. Ariz. Dep't of Econ. Sec.,* 201 Ariz. 503, 505–06, ¶¶ 16–17, 38 P.3d 41, 43–44 (App.2002); 1997 Ariz. Sess. Laws, ch. 222, § 52. In light of this legislative action, Parents maintain that the procedure set forth in A.R.S. § 8–533 is "contrary to the statutory scheme, spirit and purpose, and goals and objectives" of A.R.S. § 8–862. As such, Parents argue that the legislature intended to repeal that portion of A.R.S. § 8–533 allowing ADES to file termination petitions. We disagree.

¶ 16 "The cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind the statute." *Calvert v. Farmers Ins. Co. of Ariz.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). "That intent is first to be determined from the statute's language and if that language is plain and unambiguous leading to only one meaning, the court will follow that meaning." *Members of Bd. of Educ. of Pearce Union High Sch. Dist. v. Leslie,* 112 Ariz. 463, 465, 543 P.2d 775, 777 (1975). Moreover, repeal of a statute by implication is not favored. *UNUM Life Ins. Co. of America v. Craig,* 200 Ariz. 327, 333, ¶ 28, 26 P.3d 510, 516 (2001). "Rather, when two statutes appear to conflict, whenever possible, we adopt a construction that reconciles one with the other, giving force and meaning to all statutes involved." *Id.*

¶ 17 When read together, the language contained in both statutes is plain and unambiguous: ADES may file a petition for termination under A.R.S. § 8–533(A) or, alternatively, may file a motion for termination under A.R.S. § 8–862(D)(1) when ordered to do so by the juvenile court at a permanency hearing in the course of a dependency matter. Neither statute purports to be the exclusive procedure for ADES to seek termination of parental rights. In fact, several statutory sections and rules recognize both mechanisms as distinct from one another. *See* Ariz. R.P. Juv. Ct. 64(B) ("If the child at

**44**

issue is not a dependent child or is a dependent child who was the subject of a dependency petition filed prior to July 1, 1998, the petitioner shall file a petition for termination of parental rights" under A.R.S. § 8–533.); Ariz. R.P. Juv. Ct. 60(B) (referring to termination of parental rights by way of either a motion or a petition); Ariz. R.P. Juv. Ct. 65 (same); Ariz. R.P. Juv. Ct. 66 (same). Moreover, on a number of occasions, since the enactment of A.R.S. § 8–862, the legislature has revisited A.R.S. § 8–533(A) and has largely left it intact. *See* 1998 Ariz. Sess. Laws, ch. 276, § 13; 2000 Ariz. Sess. Laws, ch. 369, § 5; 2002 Ariz. Sess. Laws, ch. 173, § 4; 2007 Ariz. Sess. Laws, ch. 156, § 1; *Curtis v. Morris*, 184 Ariz. 393, 397, 909 P.2d 460, 464 (App.1995) ("The legislative decision not to amend or repeal [a statute] provides a clear indication that the legislature meant to retain [its effect].").

¶ 18 We do not agree with Parents' argument that, by filing a petition for termination, ADES is effectively able to circumvent other procedural requirements set forth in our juvenile statutes. Under A.R.S. § 8–846(A) (2007), "if the child has been removed from the home, the court shall order [ADES] to make reasonable efforts to provide services to the child and the child's parent." That was done in this case. As ADES stated at a pretrial conference:

> [W]e have offered services to the parents ... and I don't believe there's ... any appropriate proposed service that hasn't been considered. Obviously the parents are incarcerated, so the parent aide is not going to work out, there's no drug allegation against either parent, so we're not seeking drug treatment. We've offered psychological evaluations, at this point the parents have declined to participate in those and then we've had the whole issue of visitation dealt with therapeutically by Dr. Vitanza, so I'm not sure there's anything outstanding and we're certainly not seeking to cease any of those services.

Furthermore, the case plan was severance and adoption from the time the juvenile court found the children dependent.

 ¶ 19 We, therefore, hold that there is nothing in A.R.S. § 8–862 which precludes ADES from filing a termination petition under A.R.S. § 8–533.[3]

### CONCLUSION

¶ 20 For the above mentioned reasons, we affirm the juvenile court's order terminating Parents' rights to C.P. and Z.P.

CONCURRING: DONN KESSLER, Presiding Judge, and MAURICE PORTLEY, Judge.

---

**3.** Parents raise for the first time on appeal a number of arguments regarding other alleged procedural defects during the severance proceedings. We do not address these arguments, however, because they were not raised in the juvenile court. *See Paloma Inv. Ltd. P'ship v. Jenkins*, 194 Ariz. 133, 137, ¶ 17, 978 P.2d 110, 114 (App.1998) ("New arguments may not be raised for the first time on appeal.").