NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

DONALD JAMES HATFIELD, *Petitioner/Appellant*,

*v.*

SHELLY EVA LEE-HATFIELD, *Respondent/Appellee,*

STATE OF ARIZONA, ex rel. THE DEPARTMENT
OF ECONOMIC SECURITY,
*Intervenor/Appellee.*

No. 1 CA-CV 13-0640
FILED 10-02-2014

Appeal from the Superior Court in Maricopa County
No. FC2002-006018
The Honorable Wendy Morton, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Donald James Hatfield, Phoenix
*Petitioner/Appellant In Propria Persona*

Arizona Attorney General's Office, Phoenix
By Carol A. Salvati
*Counsel for Intervenor/Appellee*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kenton D. Jones joined.

**B R O W N**, Judge:

¶1            Donald Hatfield appeals from the superior court's judgment and order assigning him child support arrearages and interest, remanding him to custody, and requiring him to apply for employment. For the following reasons, we affirm.

## BACKGROUND

¶2            In 2003, the superior court entered a consent decree dissolving the marriage of Donald J. Hatfield ("Father") and Shelly Hatfield ("Mother"). At that time, the parties' only child was three years old. The decree provided for joint custody of the child and required Father to pay child support in the amount of $150 per month.

¶3            In December 2012, the Arizona Department of Economic Security ("ADES") filed a notice of appearance in the dissolution case "for the limited purpose of being heard on support/reimbursement issues." Several months later, ADES filed a petition to enforce support, alleging Father owed $12,779.05 for unpaid child support during the "time period 05/01/2003 through 04/30/2013, plus prejudgment interest."

¶4            The superior court held a hearing and Father appeared as ordered. After asking Father several questions about his ability to pay and the efforts he had made to find employment, the court found Father "in contempt of Court for failure to comply with a valid support order of which he had knowledge." The court remanded Father to the immediate custody of the sheriff's office and ordered that he not be released until he remitted a purge payment of $1000. The court also entered judgment in favor of ADES for child support arrearages in the amount of $12,779.05 and interest in the amount of $5,495.56. Finally, the court ordered Father to apply for at least five jobs per day and present evidence thereof at the next scheduled hearing. Father timely appealed.

## DISCUSSION

### A.      Subject Matter Jurisdiction

¶5          Father argues the superior court lacked the requisite subject matter jurisdiction to enter orders and a judgment regarding child support. Specifically, Father contends the court was divested of jurisdiction by an order entered by the juvenile court in Maricopa County in October 2005, which terminated Father's parental rights to the child.[1]

¶6          Although this argument was not raised in the superior court, and the failure to raise a claim in the superior court generally forfeits appellate review of that claim, *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44 n.3, 178 P.3d 511, 516 n.3 (App. 2008), a challenge to a court's subject matter jurisdiction may be raised at any time. *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 157, ¶ 57, 211 P.3d 16, 35 (App. 2009). We review de novo whether the court had subject matter jurisdiction over the child support enforcement matter. *See Mitchell v. Gamble*, 207 Ariz. 364, 367, ¶ 6, 86 P.3d 944, 947 (App. 2004).

¶7          As noted by ADES, Arizona Revised Statutes ("A.R.S.") section 8-539 provides as follows:

> An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations with respect to each other *except the right of the child to inherit and support from the parent*. This right of inheritance and support shall only be terminated by a final order of adoption.

(Emphasis added.) This court has previously construed § 8-539 as demonstrating "the legislature's emphasis regarding the importance of the child support obligation" and that "even an order terminating the parent-child relationship does not terminate the child's right to receive support from the parent." *Schnepp v. State ex rel. Dep't of Econ. Sec.*, 183 Ariz. 24, 28, 899 P.2d 185, 189 (App. 1995). Applying that construction here, Father's legal obligation to provide support for the child was not extinguished by entry of the October 2005 order terminating his parental rights to the child.

---

[1]      In a separately filed motion, Father urges this court to take judicial notice of the October 2005 order of the juvenile court, pursuant to Arizona Rule of Evidence 201. Because the State has not objected, we grant Father's request. *See infra* n.2.

Therefore, we reject Father's contention that the termination order divested the superior court of subject matter jurisdiction in this case.[2]

### B.    Defenses to the Child Support Obligation

¶8    Father asserts that Mother "waived" her right to collect the court-ordered child support by allegedly accepting welfare benefits in California under the pretense that she was not entitled to child support from Father. Father did not raise this argument in the superior court and has therefore forfeited appellate review of this claim. *Kimu P.*, 218 Ariz. at 44 n.3, 178 P.3d at 516 n.3. Additionally, the record is devoid of any evidence regarding Mother's application for and receipt of welfare benefits in California. Moreover, § 8-539 unambiguously states that a *child's* right to parental support is only terminated upon a final order of adoption. The child has not been adopted and Father's obligation to support the child never ended.

¶9    Father also argues he was not obligated to pay child support arrearages that accrued during the period Mother and the child were in California because Mother allegedly "abducted" and "concealed" the child and prevented him from contacting her. At the hearing, Father stated that Mother "took [the child] without [his] permission." In context, this statement was offered to explain Father's lack of any contact with his daughter since 2003. When subsequently asked by the court why he had failed to comply with his child support obligation, Father stated: "Because I . . . didn't have the money to, I – I guess." Father did not argue he was relieved of his child support obligation based on Mother's unauthorized relocation of the child. Equally important, Father never challenged Mother's relocation with the child in any fashion before ADES sought to

---

[2]    We take judicial notice that the October 2005 termination order states that "financial responsibility" for the child is "fix[ed]" with Mother. Assuming, without deciding, that this language could provide the basis for a claim of judicial estoppel had Father relied on the termination order and believed he was relieved of his child support obligation, Father has expressly argued that he had no knowledge his parental rights were terminated and the order was therefore not a factor in his decision to forego making court-ordered child support payments. As such, the judicial estoppel doctrine has no application to the facts here. Furthermore, Father made a child support payment of almost $4000 in July 2007, which is inconsistent with any claim he believed the 2005 order relieved him of the obligation to pay child support.

collect the child support arrearages. Father has therefore forfeited review of this claim on appeal. *Kimu P.*, 218 Ariz. at 44 n.3, 178 P.3d at 516 n.3.

### C.    Contempt Order Sanctions

**¶10**        Father challenges the sanctions the superior court imposed after finding him in contempt for failing to pay court-ordered child support. He argues the court unlawfully imprisoned him until he paid a monetary purge and unlawfully ordered him to apply for at least five jobs daily.

**¶11**        Civil contempt actions are not appealable. *Berry v. Superior Court*, 163 Ariz. 507, 508, 788 P.2d 1258, 1259 (App. 1989). Instead, a "special action petition is the appropriate method to challenge a civil contempt order." *Stoddard v. Donahoe*, 224 Ariz. 152, 154, ¶ 7, 228 P.3d 144, 146 (App. 2010); *Elia v. Pifer*, 194 Ariz. 74, 80, ¶ 30, 977 P.2d 796, 802 (App. 1998) ("[I]t has long been held that [a] contempt order is reviewable in appropriate circumstances by special action, but not by way of appeal."). Because Father failed to challenge the civil contempt sanctions by way of special action, he has forfeited appellate review of these claims.

**¶12**        Even if we were to treat Father's challenge as a special action, he did not raise these arguments in the superior court and has therefore waived appellate review. *Kimu P.*, 218 Ariz. at 44 n.3, 178 P.3d at 516 n.3. Moreover, we reject Father's assertion that it was unlawful to send him to "debtor's prison" for his inability to pay child support. It is well-settled that the obligation to pay child support is not regarded under the law as a "debt," but it constitutes a moral obligation "resting upon a sound public policy" and a parent who fails to pay child support may "be imprisoned unless [the parent] can purge [] the contempt by paying or by showing that he has neither the estate nor the ability to pay." *Stone v. Stidham*, 96 Ariz. 235, 239, 393 P.2d 923, 926 (1964). Father failed to present any evidence, other than his own declaration, that he was unable to pay child support. We likewise reject Father's claim that the court's order requiring him to apply for five jobs daily violated the federal ban on slavery or involuntary servitude. *See* U.S. Const. amend. XIII, § 1; *Moss v. Superior Court*, 950 P.2d 59, 66-67 (Cal. 1998) (holding that a court order requiring a parent to support a child by seeking and accepting employment "does not bind the parent to any particular employer or form of employment," does not run afoul of the federal constitution, and "is in no way comparable or akin to peonage or slavery").

## CONCLUSION

**¶13**        We affirm the superior court's enforcement judgment and order.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh