NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRADLEY H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.H., *Appellees.*

No. 1 CA-JV 19-0378

FILED 6-9-2020

Appeal from the Superior Court in Maricopa County
No. JS20034/JD35606
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

**C R U Z**, Judge:

¶1        Bradley H. ("Father") appeals the superior court's order terminating his parental rights to his minor daughter, L.H.   For the following reasons, we affirm.

**FACTUAL AND PROCEURAL HISTORY**

¶2        On December 21, 2015, L.H. was born to Father and Lavona H. ("Mother").  Mother also has two minor daughters, Jayla and Jazmin, from a previous relationship.[1]  Mother and Father married, and Father became Jayla's and Jazmin's stepfather.

¶3        In July 2017, the Department of Child Safety ("DCS") and Phoenix Police Department received a report alleging that Father had sexually abused Jayla and Jazmin, then ages ten and twelve, respectively. Officers interviewed both children.  Jazmin told police that Father talked her into pulling his pants down to observe his penis despite her objection. Further, Jazmin said when Mother was not home, Father made them all get unclothed and talk about their genitalia while he stared at them.  Jazmin also said that Father wanted them to be a "naked family."  There were no allegations of inappropriate touching, and at the time Jayla did not disclose any relevant information to the investigation.

¶4        Father denied Jazmin's allegations, and Mother was unaware of any such incidents but believed that something inappropriate had occurred.  Father said he did not want Jazmin and Jayla to grow up naïve, and recounted numerous instances where he educated them on rape, sexual abuse, and sex.  For example, Father said he told Jazmin that if he touched her in the breasts that would be sexual abuse.  On another occasion, Father

---

[1]        For ease of reference, we use pseudonyms to identify Mother's two minor children, pursuant to Arizona Rule of Procedure for the Juvenile Court ("Rule") 106(H).  Mother, Jayla, and Jazmin are not parties to this appeal.

explained to them that his penis changed sizes and the reasons for it. The police eventually closed the investigation because there was no corroborating evidence to support Jazmin's disclosure.

¶5 Although Jayla did not disclose any pertinent information to the police, she relayed to the DCS case manager similar details as those disclosed by Jazmin. Jayla recalled an instance where Father showed her what a hard and soft penis looked like and that "no liquids came out of it." Jayla confirmed that Father said he wanted to be a "naked family." She also said that he told her and Jazmin to walk around the house unclothed after their showers.

¶6 DCS then implemented a safety plan, which was agreed upon by Father. The safety plan required the children to reside with Mother and required Father to reside outside of the home. Father was also required to enroll in counseling, to have only supervised visits with L.H., and to have no contact with Jazmin and Jayla.

¶7 During a home visit in September 2017, Jazmin and Jayla revealed more information to DCS. Jayla said that Father touched around her breasts but did not touch her nipple directly. She also said Father told her to keep everything a secret. Jazmin recalled Father saying, "I see you looking at my dick. Do you want to touch it? It's ok if you do, you can touch it." Jazmin refused to do so. Jazmin also told DCS that Father said, "[A]re your boobs getting bigger . . . pull up your shirt and let me see." Jazmin pulled up her shirt and Father pointed around Jazmin's breasts to show her they were growing. At a later home visit, DCS informed Mother about what the children said, including that Father wanted them to be a "naked family." Mother said, "[H]e had talked to me about that previously and I had told him we weren't going to do that."

¶8 Based on the new information, DCS contacted the Phoenix Police Department to complete additional interviews. Jayla again recounted that Father touched around her breasts and added that he did the same to her vagina. Jayla said this occurred more than once and that it made her feel uncomfortable. During this interview, Jazmin declined to talk.

¶9        DCS filed a dependency petition in March 2018, citing Father's sexual abuse, including grooming[2] behaviors, his failure to participate in services required by the safety plan, his continued contact with Jayla and Jazmin, and unsupervised contact with L.H.  During the contested dependency, DCS learned of an earlier report regarding Father's sister.  In that 2004 case, Father admitted that when his sister was about two years old and he was about nine, he made her get unclothed and he masturbated in front of her.  He also said he was uncertain whether he touched her.  This conduct occurred over several years until his sister was about seven years old and he was in his teens.  Father's sister reported that he made her touch his penis, performed oral sex on her, and touched her vagina.

¶10       As a result of Jayla's and Jazmin's statements, and the information regarding his sister's molestation allegations, DCS offered Father multiple services, including counseling, a psychosexual evaluation to determine if sexual-offender treatment was needed, supervised visits, and parent aides.  Father's lawyer canceled Father's counseling intake and said Father was declining services.  Father also did not attend his psychosexual evaluation or parenting classes.

¶11       In July 2018, L.H. was found dependent as to Father, and all the children were eventually placed into foster homes.  The court ordered a case plan of family reunification concurrent with adoption as to L.H. and Father.

¶12       DCS again offered reunification services to Father, including counseling, a psychological evaluation, parent aides, and supervised visits.  The court also ordered that Father participate in a psychosexual evaluation, which DCS scheduled for Father.  Father consistently participated in supervised visits with L.H. and successfully completed his parent-aide services.  However, Father did not attend the court-ordered psychosexual evaluation.  DCS re-referred Father, but Father informed the provider that he would not complete the evaluation.  Father also again declined to participate in counseling.

¶13       In April 2019, DCS filed a motion to terminate Father's parental rights to L.H. on the grounds of abuse, neglect, and nine months' in out-of-home placement.  A three-day trial was held in October 2019, and

---

[2]     Grooming is the "process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse." *United States v. Johnson*, 132 F.3d 1279, 1283 n.2 (9th Cir. 1997).

the court terminated Father's parental relationship to L.H. Specifically, the court found Father's sexual abuse of Jazmin, Jayla, and his sister placed L.H. at risk of similar harm. The court also found Father willfully refused to remedy the circumstances causing L.H. to be in an out-of-home placement for more than nine months. The court then found that termination was in L.H.'s best interests. Father timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶14 "Parents possess a fundamental liberty interest in the care, custody, and management of their children," but "parental rights are not absolute." *Kent. K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). To terminate parental rights, the superior court must find by clear and convincing evidence one of the statutory grounds set forth in A.R.S. § 8-533(B), and by a preponderance of the evidence that termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018).

¶15 Father challenges both the court's findings that a statutory ground existed, and that termination was in L.H.'s best interests. "Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). Accordingly, "[w]e view the facts in a light most favorable to affirming the trial court's findings." *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994).

I.     Statutory Ground for Termination

¶16 Pursuant to A.R.S. § 8-533(B)(2), the superior court may terminate a parent-child relationship under the following circumstances:

> [T]he parent has neglected or willfully abused a child. This abuse includes serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child.

¶17 Section 8-201(2)(a) further defines abuse as including sexual abuse pursuant to A.R.S. § 13-1404. "A person commits sexual abuse by intentionally or knowingly engaging in sexual contact . . . with any person who is under fifteen years of age if the sexual contact involves only the female breast." A.R.S. § 13-1404(A).

**¶18** Father first argues there was no evidence that he abused L.H. And even if the finding of sexual abuse against Jayla and Jazmin is upheld, he argues his abuse does not put L.H. at risk of harm. The superior court may "terminate parental rights to children who exhibit no evidence of neglect or abuse, under § 8-533(B)(2), [if it finds] during the parental unfitness inquiry, by clear and convincing evidence, that there is a risk of harm to those children." *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 228, ¶ 17 (2020). Here, the superior court found by clear and convincing evidence that L.H. was at risk of harm. The allegations of sexual abuse perpetrated upon Jazmin, Jayla, and Father's sister, together with Father's refusal to engage in a psychosexual evaluation, and any recommended treatment, support the superior court's finding of risk of harm to L.H.

**¶19** Father also argues the evidence did not support a finding that he abused Jazmin and Jayla because the only evidence presented was their statements of abuse, which were inconsistent, and therefore lacked sufficient indicia of reliability. Father also argues their statements are not reliable because he denied all allegations of abuse. Father cites Rule 45(E), which says statements that lack sufficient indicia of reliability are inadmissible. However, Father never objected to the admission of the statements at the termination hearing. In fact, Father explicitly said he wasn't arguing against the admissibility of their statements based on Rule 45. We do not address arguments raised for the first time on appeal. *See Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44, ¶ 19 n.3 (App. 2008). In any event, Father's argument essentially asks us to reweigh the credibility of Jazmin, Jayla, and Father. *See* Ariz. R. Evid. 806 (inconsistent statements admissible to attack hearsay declarant's credibility). We decline the invitation to do so because the superior court is in the best position to assess credibility.[3] *See Demetrius L.*, 239 Ariz. at 3, ¶ 9.

---

[3] The parties agree the court erred in finding Jazmin and Jayla fondled Father's penis. After a review of the entire record, we conclude that although Father did encourage Jazmin to fondle his penis, nothing in the record supports a finding that she did in fact do so. Accordingly, the court erred in making such a finding. The court also erred in finding that Father touched both Jazmin's and Jayla's breasts. The evidence supports that he touched around Jayla's breasts. We note that Father does not challenge that his conduct constitutes sexual abuse, but rather asserts his argument outlined in this paragraph, namely that Jayla's and Jazmin's statements

¶20        Because sufficient evidence supports the court's finding concerning A.R.S. § 8-533(B)(2), we need not address the nine months' in out-of-home placement ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).  Nevertheless, there is sufficient evidence that Father willfully refused to remedy the circumstances that caused L.H. to be out of the home for nine months. *See* A.R.S. § 8-533(B)(8)(a).  Although Father participated in parent-aide services and supervised visits, Father consistently refused to participate in counseling and a court-ordered psychosexual evaluation.  Both the counseling and psychosexual evaluation were directly related to remedying his sexual behavior toward children, which is what caused L.H. to be out of the home.  Accordingly, the court did not err in terminating Father's parental rights pursuant to A.R.S. § 8-533(B)(8)(a).

## II.        Best-Interests Determination

¶21        The court must also find the termination of the parent-child relationship is in the child's best interests.  A.R.S. § 8-533(B).  "The 'child's interest in stability and security' must be the court's primary concern." *Alma S.*, 245 Ariz. at 150, ¶ 12 (quoting *Demetrius L.*, 239 Ariz. at 4, ¶ 15). "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Id.* at ¶ 13.

¶22        Father argues L.H. and he have a bond.  He also asserts there is no evidence that L.H. will be harmed if termination is denied because Father acted appropriately during supervised visits, which is all an unrelated family court custody order currently allows.  First, the superior court considered the bond between Father and. L.H., but such a bond is not dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).  In fact, the court found the bond did not outweigh the potential risk of harm to L.H.  The evidence presented shows Father tends to sexually abuse young girls near L.H.'s age.  Father's refusal to engage in services to address his tendencies causes him to remain a risk to L.H.  Additionally, the fact that Father acted appropriately while parent aides were present and monitoring his visits has little value given that evidence provided to the court showed parents who sexually abuse their children generally do not do so in front of other people.  Finally, a family court order restricting

were unreliable, and therefore insufficient evidence existed to terminate his parental rights.

Father to supervised visits is subject to future modification, which could put L.H. at risk of sexual abuse. Because reasonable evidence supports the finding that severance is in L.H.'s best interests, the superior court did not err in terminating the parental relationship.

## CONCLUSION

¶23 For the foregoing reasons, we affirm the superior court's order terminating Father's parental rights to L.H.



AMY M. WOOD • Clerk of the Court
FILED: AA