NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TASHA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.S., I.F., M.F., E.F., *Appellees*.

No. 1 CA-JV 20-0298
FILED 4-8-2021

Appeal from the Superior Court in Maricopa County
No. JD35179
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

¶1 Tasha R. (Mother) appeals from an order terminating the parent-child relationships with her children T.S., I.F., M.F. and E.F. Because Mother has shown no error, the order is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2 Mother and Gerald F. (Father, who is not a party to this appeal) are the biological parents of I.F., born in 2017, M.F., born in 2018, and E.F., born in 2019. Mother is also the biological parent of T.S., born in 2012.

¶3 In December 2017, Phoenix police officers investigated a report at Mother and Father's apartment and found Mother apparently under the influence. Mother had left T.S. and I.F. with the neighbor and had no baby formula for five-month-old I.F. The Department of Child Safety (DCS) took the children into custody and petitioned for dependency. The court found the children dependent as to Mother and adopted a case plan of family reunification.

¶4 In August 2018, while Mother was pregnant with M.F., I.F. and T.S. were returned to Mother and Father's physical custody, as the parents were "doing very well and [had] completed almost all of their services." The court then dismissed the dependency in December 2018.

¶5 Months later, DCS received reports that Mother and Father were using methamphetamine and were not properly caring for or supervising the children. DCS again took custody of the children and petitioned for dependency in June 2019 as to T.S., I.F. and M.F. Mother, who was pregnant with E.F. at the time, tested positive for methamphetamine. DCS offered Mother various services, including drug testing, substance-abuse assessment and treatment through TERROS, a case aide and parent aide, individual counseling, a psychological consultation and transportation.

¶6            After the court changed the case plan to severance and adoption in September 2019, DCS moved to terminate Mother's parental rights on the grounds of chronic and ongoing substance abuse, A.R.S. § 8-533(B)(3) (2021),[1] and as to T.S. and I.F., prior removal within 18 months, A.R.S. § 8-533(B)(11). In October 2019, DCS petitioned for dependency as to then-newborn E.F.

¶7            The court held a one-day contested severance adjudication in January 2020. While the court found "grounds for severance had been established," it did not find severance to be in the children's best interests. The court found that T.S. was in a very fragile emotional state, and there was a lack of permanency for her and her three siblings. The court added, however, that "parents should take no comfort from this ruling. They are a long way from reunification, and the lack of permanency option at this point is the *only* thing that saves them — for now."

¶8            At the time of the hearing, I.F., M.F., and E.F. were placed with paternal cousins, a nonadoptive placement. After the hearing, M.F. and I.F. were placed with their paternal grandmother, and E.F. was placed with paternal second cousins. These were adoptive placements. T.S. had a different placement history, given her needs. In May 2020, T.S. was placed with other paternal relatives, who understood her needs and medication regimen and had expressed an interest in adopting her.

¶9            After the first severance trial, Mother relapsed and used methamphetamine often in the first part of 2020. She admitted herself into a residential substance-abuse program in April 2020 but did not participate in services with TERROS or submit to urinalysis testing. In April 2020, the child safety specialist reported that "[t]he situation is starting to spiral out of control. [Mother] has been involuntarily hospitalized, due to her untreated mental health. [Mother] has no income with which to provide for the basic needs of the children. There is no adult in the home that can keep the children safe."

¶10           In May 2020, the court affirmed the case plan of severance and adoption. DCS then moved to terminate the parent-child relationship between Mother and all four children on the grounds of chronic substance abuse, A.R.S. § 8-533(B)(3), six months' time-in-care as to M.F. and E.F., A.R.S. § 8-533(B)(8)(b), nine months' time-in-care as to T.S., I.F., and M.F.,

_____

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

A.R.S. § 8-533(B)(8)(a), fifteen months' time-in-care as to T.S. and I.F., A.R.S. § 8-533(B)(8)(c) and prior removal as to T.S. and I.F., A.R.S. § 8-533(B)(11).

¶11　　　　Mother re-engaged in substance abuse testing in mid-2020, participating a few times but not regularly. While Mother struggled to engage with other services, the child safety specialist recommended "the case plan of Severance and Adoption be affirmed due to parents['] behaviors and lack of engagement."

¶12　　　　The court held a one-day severance adjudication in September 2020. At the trial, the case manager testified that T.S. was "improving a lot with her behavior" and all the placements were providing for the children's needs, physically, mentally and emotionally. After taking the matter under advisement, the court granted the motion to terminate. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Arizona Rules of Procedure for the Juvenile Court 103–104.

## DISCUSSION

¶13　　　　As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

## I.　　The Superior Court Did Not Abuse Its Discretion in Finding Termination Was in the Children's Best Interests.

¶14　　　　Mother argues the superior court improperly determined that termination was in the children's best interests. The court must determine by a preponderance of the evidence that severance is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50 ¶ 8 (2018). The best interests determination "focuses primarily upon the interests of the child, as distinct from those of the parent." *Kent K.*, 210 Ariz. at 287 ¶ 37. "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance *or* be harmed by the

continuation of the relationship. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis added; citing cases). Best interests may be based on "the immediate availability of an adoptive placement." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377 ¶ 5 (App. 1998); *see also Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19 (App. 2004).

¶15        In the first severance trial, the court denied the motion for severance on best interests grounds, noting a lack of permanency. In the second trial, the court found that the children's current placements are the least restrictive environment required to meet the needs of the children. Further, each of the current placements showed a willingness to adopt the children. Mother argues the court failed to address how DCS "rectified the doubts from the first hearing." But the only doubts stemmed from the lack of permanency. The findings from the second trial show the changes in the children's placements since the first trial resolved the court's prior concern relating to the best interests finding.

¶16        Mother argues DCS failed to meet its burden of proof by failing to show that the children would not incur a detriment by severing the parent-child relationship. But DCS need only prove whether the child "would derive an affirmative benefit from termination *or* incur a detriment by continuing in the relationship." *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42 ¶ 10 (App. 2008) (emphasis added; citation omitted). The superior court properly found that DCS proved the affirmative benefit — that the children had permanent adoptive placements available that were meeting their needs. Thus, Mother has shown no error.

## II.        Mother Was Not Deprived of Her Constitutional Rights.

¶17        A parent has a fundamental right to raise their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 298 ¶ 21 (App. 2020) (citing cases). Still, this right is not absolute, and a court may sever parental rights so long as the parents are provided with "fundamentally fair procedures." *Kent K.*, 210 Ariz. at 284 ¶ 24 (citing cases).

¶18        Mother argues that, because DCS filed its second motion for termination just four months after the first motion was denied, she and her children were denied their fundamental constitutional rights, and that DCS' "rush to refile without addressing the concerns of the court in a meaningful way was fundamentally unfair." Mother cites no case law, and this court has found none, that imposes a temporal limitation on when DCS may file a second motion for termination. A child's environment is constantly

evolving, and it would go against a child's best interests to bar re-litigation of the best interests issue based on new evidence. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 349 ¶¶ 16–17 (App. 2013). DCS addressed the court's concerns about permanency and T.S.'s stability and, on that different record, the court granted the motion to terminate. Thus, Mother has not shown her constitutional rights to due process were denied.

## CONCLUSION

¶19　　　The order terminating Mother's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:　AA