NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

RAESCHELLE L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.B., *Appellees*.

INDIGENT DEFENSE AGENCIES,
*Amicus Curiae*.

No. 1 CA-JV 21-0239
FILED 8-30-2022

Appeal from the Superior Court in Mohave County
No. S8015JD202100018
The Honorable Megan A. McCoy, Judge
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

E.M. Hale Law, Lakeside
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

Pima County Public Defender's Office, Tucson
By David J. Euchner, Derek J. Koltunovich
*Counsel for Amicus Curiae Indigent Defense Agencies for Appellant*

Maricopa County Legal Defender, Phoenix
By Sherri McGuire Lawson, Jamie R. Heller
*Counsel for Amicus Curiae Indigent Defense Agencies for Appellant*

Maricopa County Public Advocate's Office, Phoenix
By Seth Draper, Suzanne Sanchez
*Counsel for Amicus Curiae Indigent Defense Agencies for Appellant*

Pima County Legal Defender, Tucson
By James L. Fullin, Kathleen Coughlin
*Counsel for Amicus Curiae Indigent Defense Agencies for Appellant*

———————————————

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

———————————————

**G A S S**, Vice Chief Judge:

**¶1**        Mother appeals the superior court's order terminating her parental rights based on two statutory grounds—neglect and chronic substance abuse. Because reasonable evidence supports the superior court's finding under the chronic substance abuse ground, we affirm without reaching the issues mother raised regarding the neglect ground.

### FACTUAL AND PROCEDURAL HISTORY

### I.        Mother's History of Substance Abuse and Treatment

**¶2**        Mother had a history of substance abuse dating back to when she was 13. She sought treatment for substance abuse as early as 2006. After her child's birth in 2013, mother tested positive for "polysubstance amphetamines, benzodiazepines, THC, and opiates." The child's meconium tested positive for THC. At that time, mother acknowledged she

2

began using marijuana and methamphetamine as a teenager, and continued to "struggle[] with alcohol, benzos, marijuana and methamphetamine" during the next 20 years.

¶3        Because her child was born substance-exposed, in 2013 the Department of Child Safety (DCS) provided mother with in-home services, including family preservation, drug testing and treatment, counseling, medication management, and parenting classes. Mother successfully participated in and completed those services. But by 2015, mother relapsed, resumed using methamphetamines, and started using heroin.

## II.        Mother's Current Dependency and Termination

¶4        About six years later, on March 19, 2021, police officers conducted a drug raid at the house where mother lived with father and their then-seven-year-old child. The child was in the house during the raid. Officers searched the house and found methamphetamine, heroin, digital scales, used foil with drug residue, and glass pipes. Mother and father admitted they were using methamphetamine and heroin in, and were selling drugs from, the house. DCS took temporary custody of the child.

¶5        On March 24 (five days after the raid), DCS filed a dependency petition alleging the child was dependent as to mother based on abuse or neglect. DCS did not allege any aggravating circumstances. The superior court held a preliminary protective hearing, at which the parties agreed mother would receive a minimum of four hours of supervised family time each week. The superior court ultimately placed the child with maternal great-aunt as kinship placement, where the child remained as of the termination trial.

¶6        Just 16 days after filing the dependency (and only 21 days after the raid), DCS moved to terminate mother's parental rights, alleging neglect and chronic substance abuse. In support of its termination motion, DCS alleged it provided mother with rehabilitative services and such services would be futile.

¶7        Mother was incarcerated when the case began. Even so, DCS referred mother to a substance-abuse assessment and awareness classes, Arizona Families First, parenting classes, hair analysis, and random urinalysis testing. Mother engaged in Arizona Families First, was in recovery maintenance, and completed a Mohave Mental Health course. And, though mother missed one counseling and one case-management appointment, she otherwise participated in the services DCS offered.

¶8            Unfortunately, mother's participation in drug testing tells a different story. Upon her release from custody in April, mother provided a hair sample, which tested positive for methamphetamine and opiates. Mother did not submit to urinalysis drug testing for the following seven weeks. Finally, mother began urinalysis testing on June 10. From June 10 until the trial on July 9, mother tested positive for THC but negative for heroin and methamphetamine.

¶9            As for how mother's substance abuse affected the child, mother had not taken the child to see a doctor since 2014. At seven years old, the child could not count beyond six and had other educational delays. The child also displayed hyperactivity, causing DCS to seek a hair test. The child's hair tested positive for methamphetamine and opiates.

¶10           On July 9 (less than four months after the case began), the superior court held a termination hearing and found DCS proved both statutory grounds for termination by clear and convincing evidence. The superior court also found termination served the child's best interests.

¶11           The superior court explained it would have liked to "give Mom more time so she [could] focus on her sobriety," but the child needed the type of stability mother could not provide while she was "consumed with recovery and rebuilding." Further, the superior court found DCS "made reasonable efforts to reunify th[e] family, and to continue such efforts would be futile." The court based those findings on mother's long history of substance abuse, her prior relapse after DCS provided her with services, and—despite her "new-found sobriety"—the long journey of recovery ahead of her.

¶12           Mother timely appealed. After the parties filed their briefs, we ordered supplemental briefing and invited other interested parties to file amicus briefs.[1] This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

---

[1] We thank the Indigent Defense Agencies, Maricopa County Legal Defender, Maricopa County Public Advocate, Pima County Legal Defender, and Pima County Public Defender's Office for their *amicus* brief on the issues raised in this appeal.

**ANALYSIS**

## I.     Standard of Review

**¶13**          This court defers to the superior court's factual findings "unless no reasonable evidence supports those findings." *Dep't of Child Safety v. Juan P.*, 245 Ariz. 264, 266, ¶ 7 (App. 2018). And this court does not reweigh evidence but must determine if reasonable evidence supports the court's ruling. *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538, ¶ 19 (App. 2018).

**¶14**          "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). Even so, "parental rights are not absolute." *Id.* at 284, ¶ 24. In Arizona, "[t]o justify termination of the parent-child relationship, the [superior] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533, and also that termination is in the best interest of the child." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

**¶15**          When DCS seeks to terminate parental rights under the chronic substance abuse ground, DCS must make reasonable efforts to reunify the family and provide appropriate reunification services. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 & n.3 (App. 2005). DCS, therefore, must provide a parent "with the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Those efforts "enable [DCS] to evaluate a parent's progress, or lack thereof, toward making reunification possible." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 31 (App. 2009). To that end, DCS must "undertake measures with a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

**¶16**          DCS, however, need not leave the reunification window open indefinitely, and it would not be in a child's best interests to do so. *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). DCS also need not "provide every conceivable service or . . . ensure that a parent participates in each service it offers." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011) (quoting *JS-501904*, 180 Ariz. at 353). And DCS need not pursue futile rehabilitative efforts to unite parents and children. *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. In determining whether services would be futile under the chronic substance abuse ground, the superior court may consider "the length and frequency of [the parent's]

substance abuse, the types of substances abused, behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2020).

## II. Termination Under the Chronic Substance Abuse Ground

**¶17** The superior court found DCS "made reasonable efforts to reunify this family, and to continue such efforts would be futile." Reasonable evidence supports that finding.

**¶18** For approximately 20 years, mother struggled with various substances, including "alcohol, benzos, marijuana, and methamphetamine." Mother worked with DCS after the child was born substance-exposed. At that point, mother had completed significant treatment and understood the impact of ongoing substance abuse on the child and her ability to parent the child. Even so, mother continued abusing substances and exposing her child to them. By the time DCS intervened in 2021, mother was using both heroin and methamphetamine daily.

**¶19** DCS referred mother to substance-abuse assessment and awareness classes, Arizona Families First, parenting classes, hair analysis, and random urinalysis testing. DCS concedes mother, "by and large, participated in the substance-abuse and mental-health services provided." But upon her release from custody, mother provided a hair sample, which tested positive for methamphetamine and opiates.

**¶20** After her release, mother participated in Arizona Families First, completed a positive change class with Mohave Mental Health, and was in recovery maintenance at the time of the trial. Mother, however, did not submit to urinalysis drug tests for seven weeks. Then, on June 10 (a month before the July 9 termination trial), mother finally submitted urinalysis tests and tested negative for both heroin and methamphetamine. Still, she tested positive for THC, showing her ongoing use of a substance she first began abusing at age 13 and the same substance to which she exposed the child while pregnant.

**¶21** We are not untroubled by the speed with which this case moved from the initial dependency to termination. And it is better practice, when seeking to establish the futility of services under the substance abuse ground, to present evidence regarding futility from a person with addiction expertise. But under the unique facts of this case, we cannot say DCS failed to establish clear and convincing evidence of the futility of further services. *See Christina G.*, 227 Ariz. at 236, ¶ 20. Mother has battled a 20-year

addiction with serious drugs. *See Jennifer S.*, 240 Ariz. at 287, ¶ 20 (discussing relevant considerations in determining whether an addiction will continue for a prolonged indeterminate period). Though mother demonstrated progress in the services DCS offered, she relapsed after treatment on several earlier occasions. *See id.* at ¶ 21. We recognize DCS demanded mother show long-term sobriety. And mother established some level of short-term sobriety for some substances, but she still tested positive for THC. Mother gave birth to a child exposed to THC, yet she continued her substance abuse even after learning the effects of that exposure. And more importantly, she exposed the child to more dangerous drugs (heroin and methamphetamine) to the point the child tested positive for those substances at seven years old.

**¶22** Based on this record, this court cannot say the superior court abused its discretion in finding DCS need not leave the window of opportunity for mother open any longer. *See JS-501568,* 177 Ariz. at 577; *see also Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42, ¶ 11 (App. 2008) ("A trial court abuses its discretion when it exercises discretion in a manner that is either 'manifestly unreasonable' or based on untenable grounds or reasons." (citation omitted)). Our holding does not suggest three months is always a sufficient period to determine futility. Our holdings in termination cases such as here are highly case- and fact-specific, and a different set of facts may well demand a contrary conclusion. But here, reasonable evidence supports the superior court's termination under the chronic substance abuse ground.

## CONCLUSION

**¶23** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:         JT